UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FREDERIC C. CARPENTER, JR.,

                                   Petitioner,

                                                           9:10-CV-01240
v.
                                                           (GTS/TWD)
DAVID UNGER,

                                   Respondent.
_____

APPEARANCES:                              OF COUNSEL:

FREDERIC C. CARPENTER, JR.
99-B-1586
Plaintiff *pro se*
Wyoming Correctional Facility
P.O. Box 501
Attica, NY 14011

HON. ERIC T. SCHNEIDERMAN           PAUL B. LYONS, ESQ.
Attorney General for the State of New York     LISA FLEISCHMANN, ESQ.
Counsel for Respondent
120 Broadway
New York, New York 10271


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

## I.      INTRODUCTION

      Petitioner Frederic C. Carpenter, Jr., a New York State prison inmate appearing *pro se*,

has filed two timely petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  The

proceedings were consolidated in July 24, 2012, Text Orders in *Carpenter v. Unger*, No. 9:10-

_____

      [1]  Respondent has conceded that both proceedings are timely.  (Dkt. No. 44 at 29-30.)

CV-1240 and No. 9:12-CV-957.[2]

In his Amended Petition in No. 9:10-CV-1240, Petitioner challenges the judgment of
conviction entered in Broome County Court under Indictment No. 98-82, based upon his July 31,
2000, guilty plea to Rape in the Second Degree under N.Y. Penal Law ("Penal Law") § 130.30,
as well as the judgment of conviction entered in Cortland County Court under Indictment No. 99-
112, based upon his March 30, 2000, guilty plea to Sexual Abuse in the First Degree under Penal
Law §130.65.[3]  (Dkt. Nos. 35 and 46-1 at 28.)[4]  The Petition in No. 9:12-CV-957 is limited to the
judgment of conviction under Indictment No. 99-112.  (Dkt. No. 46 at 224; No. 9:12-CV-957,
Dkt. No. 1.)  For the reasons that follow, the Court recommends that Petitioner's Amended
Petition in No. 9:10-CV-1240  (Dkt. No. 35) and his Petition in No. 9:12-CV-957 (No. 9:12-CV-
957, Dkt. No. 1) be denied.

## II.     BACKGROUND

### A.     Indictment No. 98-82

In 1998, Petitioner was indicted for Sexual Abuse in the Second Degree, Penal Law
§ 130.60(2) (subjecting a person less than fourteen years old to sexual conduct); Rape in the

---

[2]  Petitioner's first filed habeas corpus proceeding, *Carpenter v. Unger*, No. 9:10-CV-
1240, has been designated as the lead case, and the parties have been directed to file all papers in
proceedings No. 9:10-CV-1240 and No. 9:12-CV-957 under No. 9:10-CV-1240.  *See* Text Order
of August 20, 2012, in *Carpenter v. Unger*, No. 9:10-CV-1240.

[3]  The Amended Petition is identified as having been filed solely to seek habeas relief
with regard to Indictment No. 98-82.  (Dkt. No. 35 at 1).  The claims in the Amended Petition
that relate to Indictment No. 99-112 arise out of Petitioner's agreement to withdraw his motion to
withdraw the guilty plea entered on Indictment No. 99-112 as a part of his guilty plea under
Indictment No. 98-82.  *Id*. at 5-7.

[4]  Unless otherwise indicated, docket references made herein refer to No. 9:10-CV-1240.

2

Second Degree, Penal Law § 130.30 (a person eighteen or more engaging in sexual intercourse with a person to whom he is not married who is less than fourteen years old); and Endangering the Welfare of a Child, Penal Law § 260.10(1) (knowingly acting in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old, by subjecting the child to sexual intercourse). (Dkt. No. 46-3 at 253-55.)

Plaintiff entered a guilty plea to Rape in the Second Degree, Penal Law § 130.30, in satisfaction of the charges on July 31, 2000, before the Hon. Martin E. Smith, a Broome County Court Judge assigned to the case after Cayuga County Court Judge Emerson R. Avery, Jr. granted Petitioner's third motion for recusal on bias grounds. (Dkt. Nos. 46 at 298-299, 325; 46-1 at 28.) Judge Smith agreed to sentence Petitioner, adjudicated a second violent felony offender, to two to four years to run concurrently with a four to twelve year sentence Petitioner was already serving in connection with a probation violation.[5] *Id*. at 17-18; *see also* Dkt. No. 46 at 211, 214. Petitioner also agreed to waive his appeal rights. (Dkt. No. 46-1 at 17-18.)

### B. Indictment No. 99-112

On August 12, 1999, while the charges under Indictment No 98-82 were pending, Petitioner was indicted on charges of Unlawful Imprisonment Second, Penal Law § 135.05 (restraint of another person); Attempted Sodomy in the First Degree, Penal Law §§ 110.00 and 130.50 (attempting to engage in oral or anal sexual conduct with another person by forcible

---

[5] Petitioner was originally sentenced to a term of probation on a charge of Criminal Possession of a Controlled Substance in the Fourth Degree, Penal Law § 220.09. (Dkt. No. 46 at 214, 204.) The substance involved was crack cocaine. *Id*. at 214. At a probation violation hearing in Cortland County Court on June 15, 1999, Petitioner was found to have violated the terms of his probation by continuing to use crack cocaine and given an indeterminate sentence of four to twelve years, with a minimum of four years to be served. *Id*. at 172-73, 206-07, 211.

compulsion); Sodomy in the First Degree, Penal Law § 130.50(1) (engaging in oral or anal sexual conduct with another person by forcible compulsion); and Sexual Abuse in the First Degree, Penal Law § 130.65(1) (subjecting another person to sexual contact by forcible conduct), in connection with an incident involving his estranged wife. (Dkt. No. 46 at 7, 152-55.) At his March 30, 2000, plea allocution, Petitioner admitted that on March 26, 1999, he tied his wife's wrists together behind her back and had sexual intercourse with her against her will. *Id*. at 229.

Cortland County Court Judge William F. Ames agreed to sentence Petitioner to a determinate sentence of three years to run concurrently with the four to twelve year sentence Petitioner was already serving and any sentence imposed under Indictment No. 98-82, and five years post-release supervision; waiver of the right to appeal except as to certain issues; performance of an HIV test; waiver of a sex offender risk assessment hearing; and an order of protection in favor of the victim for six years. (Dkt. Nos. 46 at 223; 46-1 at 136-140, 149-150.)

C. **Petitioner's Dissatisfaction with Defense Counsel and Motion to Withdraw His Guilty Plea Under Indictment No. 99-112**

When Petitioner appeared for sentencing on his guilty plea under Indictment No. 99-112 on May 31, 2000, Matthew Butler, from the Butler Law Firm, appearing as Petitioner's counsel, informed Judge Ames that Petitioner wanted an opportunity to address the Court. (Dkt. No. 46 at 238.) Petitioner told Judge Ames that he had not been informed before pleading guilty that he would have to swear and lie under oath to take this plea. *Id*. at 238-39. When Judge Ames cautioned Petitioner that he should express his concerns through his attorney because anything he said could be used against him at trial were the plea vacated, Petitioner informed the Court that he had not heard from his attorney since he entered the guilty plea. *Id*. at 239.

4

Judge Ames adjourned the sentencing because Petitioner requested an opportunity to talk to his attorney, David Butler ("Butler"), also of the Butler Law Firm. (Dkt. No. 46 at 242.) On June 1, 2000, Public Defender David J. Adinolfi, II ("Adinolfi"), Petitioner's defense counsel on Indictment No. 98-82, wrote to Assistant District Attorney Wendy Franklin ("ADA Franklin") informing her that he had spoken with Petitioner and the Butler Law Firm, and was advised by Petitioner that if his guilty plea on Indictment No. 99-112 were vacated, Petitioner would accept: (1) an *Alford* plea relative to Indictment No. 99-112, conditioned upon the previously agreed three year determinate sentence to run concurrently with the probation violation sentence; and (2) a plea to Attempted Rape in the Second Degree relative to Indictment No. 98-82, conditioned upon a sentence of one and a half to three years to run concurrently with the terms imposed for the probation violation and under Indictment No. 99-112. *Id*. at 240, 242.

When Petitioner reappeared for sentencing before Judge Ames on June 2, 2000, accompanied by his attorney, Butler informed the court that Petitioner had been in contact with a number of attorneys and had advised Butler that he was not satisfied with the services he had rendered at the plea. *Id*. at 244. According to Butler, Petitioner had indicated to him that he wanted to terminate Butler's services and potentially make a motion to withdraw his guilty plea. *Id*. Petitioner told the Court he wanted time to obtain another attorney, most likely Adinolfi, and to discuss moving to withdraw the plea with him. *Id* . at 244-47. Judge Ames adjourned sentencing until July 5, 2000. *Id*. at 247-48.

ADA Franklin responded to Adinolfi's June 1st letter on the following day after sentencing had been adjourned. *Id*. at 250-51. Franklin informed Adinolfi that the People would accept only the sentence agreed to at the time of the guilty plea on Indictment No. 99-112. With

regard to Indictment No. 98-82, the District Attorney would accept a plea to Rape in the Second

Degree, provided Petitioner agreed to a full allocution of the crime; three and a half to seven

years to run concurrently with the probation violation sentence and any sentence on Indictment

No. 98-82; waiver of appeal rights; HIV test; order of protection for the victim for ten years; and

registration as a sex offender with a waiver of the right to a risk level hearing. (Dkt. No. 46 at

251.)

Thereafter, on June 14, 2000, Adinolfi filed a motion to withdraw Petitioner's guilty plea

under Indictment No. 99-112. *Id*. at 252. Adinolfi filed a supplemental motion to withdraw on

June 29, 2010.[6] *Id*. at 258. According to Petitioner's moving papers, his family had retained

Butler to represent him on Indictment No. 99-112 in 1999. *Id*. at 261. In February of 2000,

when Petitioner's family could not meet Butler's demands for additional money, Butler cut off

communications with Petitioner, leading him to contact the Public Defender's Office in March of

2000, to find out if Butler was still representing him.

Petitioner claims that on the date of the plea, Butler met with him in a holding room at the

courthouse and told him he was going to plead him out because Petitioner could not pay him an

additional $4,500. *Id*. In two heated conversations, Butler instructed Plaintiff to plead guilty to

sexual abuse pursuant to a plea bargain Butler had worked out. *Id.* Butler told Petitioner that the

terms of the plea bargain were a three year determinate sentence to run concurrently with his

_____

[6] Petitioner initially moved to withdraw his guilty plea under CPL § 440.10. (Dkt. No. 46 at 252.) Petitioner's counsel filed the supplemental motion after determining that because no sentence had yet been imposed or judgment of conviction had yet been entered, the motion was properly made under CPL § 220.60(3), which provides in relevant part that "[a]t any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, . . . to withdraw such plea, and in such event the entire indictment, as it existed at the time of such plea, is restored."

sentence for the probation violation, a six year order of protection for his wife, and waiver of the right to appeal. (Dkt. No. 46 at 262.) According to Petitioner, he was a nervous wreck and was very frightened when he appeared before the court because he felt betrayed by his attorney, who had been paid $8,000 to take the case to trial. *Id*. Petitioner claims that when he attempted to speak with Butler during the plea allocution, Butler repeatedly told him to shut up and answer yes to the Judge's questions. *Id*. Petitioner contends he entered the plea under duress and as the result of coercion, without effective assistance of counsel, even though he wanted to take the case to trial because he was innocent of the charges. *Id*. Petitioner believed that his estranged wife, the sole witness for the prosecution, had no credibility, and he himself had witnesses who would testify about being told by her that she was setting Petitioner up for a fall out of concern he would expose her drug use and drug dealing and obtain custody of their three infant children. *Id*.

In a July 5, 2000, appearance before Judge Ames, Adinolfi argued that Petitioner was entitled to a hearing on his motion under CPL § 220.60(3), while the People took the position that because the motion was made pre-sentencing, court review was confined to the plea record. *Id*. at 266-270. Judge Ames adjourned the motion and asked counsel to submit law on the hearing issue for his consideration. *Id*. at 271-72. The People submitted an affirmation and letter-memorandum of law in opposition to Petitioner's motion to withdraw his guilty plea on July 6, 2000. *Id*. at 275-281. Petitioner's counsel submitted case law to the court on July 11, 2000. *Id*. at 282.

On the adjourned date, Judge Ames referenced a letter he had sent to counsel informing them that he felt he could decide the matter on the papers and was inclined to grant the defense request to withdraw the guilty plea. *Id*. at 287. The People had responded to Judge Ames' letter

7

with a July 25, 2000, letter advising the Court of a change in position with regard to a hearing on

Petitioner's motion and requesting that a hearing be held. (Dkt. No. 46 at 282-85.) When

Petitioner's counsel asked Judge Ames to issue an order vacating the plea in accordance with his

letter during the appearance, Judge Ames indicated that his letter was not an order as much as

what he was thinking. ADA Franklin reiterated the People's request for a hearing and Judge

Ames ultimately agreed that a hearing would be held. *Id.* at 287-88.

>    **D.      Petitioner's Withdrawal of His Motion to Withdraw His Guilty Plea Under
>             Indictment No. 99-112 and His Guilty Plea Under Indictment No. 98-82**

On July 31, 2000, the parties appeared before Judge Smith for oral argument on the

People's motion for re-argument and reconsideration of an adverse discovery order, and

Petitioner's motions to dismiss Indictment No. 98-82 and for disclosure of records. (Dkt. No. 46

at 325-27.) During the course of oral argument, Judge Smith learned about Indictment No. 99-

112 and Petitioner's pending motion to withdraw his guilty plea. (Dkt. No. 46-1 at 15-16.) The

Judge thereupon told counsel he wanted to see them in chambers. *Id.* Following the in-chambers

conference, Judge Smith called Petitioner up to the bench and informed him that during his

discussion with counsel, a disposition of the case had been proposed to the Court. *Id.* at 17. The

Judge told Petitioner that he had informed Petitioner's counsel that for purposes of plea

negotiations and disposition, he would consent to the proposal. *Id.*

Judge Smith described the proposed disposition to Petitioner as follows:

> Mr. Carpenter, there's several things involved here. First of all, if
> you were to enter a plea of guilty under this indictment, 98-82, if
> you were to enter a plea of guilty to the second count of that
> indictment which charges you with rape in the second degree, you
> would receive a sentence as a second felony offender. I am advised
> you are a second felony offender and you've already been

8

adjudicated the same. I would impose a sentence of two to four
years. That sentence of two to four years would run concurrent to a
sentence you're now serving on a violation of probation. It would
also involve thirdly, you withdrawing a motion that has apparently
been made on your behalf in front of Judge Ames where you
entered a plea of guilty to sexual abuse in the first degree in
satisfaction of an indictment that charges you with sodomy in the
first degree and for which you're to receive a sentence of three
years determinate. And that all three sentences would run
concurrently; that is, they would run at the same time. And it
would also, fourthly involve you withdrawing all motions filed in
this particular case. Agreed. Is that fairly stated, Mr. Adinolfi?

(Dkt. No. 46-1 at 17-18.) Judge Smith indicated that under the plea agreement, Petitioner would

also be required to give up his right to appeal under Indictment Nos. 98-82 and No. 99-112. *Id*.

The Court asked Adinolfi if Petitioner was willing to do that and Adinolfi responded in the

affirmative. *Id*. at 19. When Judge Smith asked Petitioner if that was correct, Petitioner also

responded in the affirmative. *Id.*

Petitioner accepted the plea agreement as explained to him in court. *Id*. at 17-27.

Because of the prior nature of the proceedings involving Petitioner, Judge Smith insisted that the

plea be under oath. *Id*. at 19-20. In his plea allocution on Indictment No. 98-82, Petitioner

admitted to having engaged in sexual intercourse with an under fourteen year old female visitor

at his home in April of 1998. (Dkt. No. 46-1 at 24-25, 28.) He conceded that the victim's grand

jury testimony that Petitioner sat on the couch with her, pulled down his pants and engaged in

sexual intercourse with her involving some degree of penetration was correct. *Id*. at 27-28.

### E.     Petitioner's Motion to Withdraw his Guilty Plea on Indictment No. 98-82 and Sentencing by Judge Smith

On August 14, 2000, Petitioner sent a letter to the State of New York Commission on

Judicial Conduct ("CJC") complaining about Judge Smith.[7] (Dkt. No. 46-1 at 33-35.) Petitioner

claimed that Adinolfi had told him that Judge Smith made an off the record statement that if

Petitioner did not accept the plea agreement on Indictment No. 98-82 the Judge would:

> use his "power" to have the Administrative Judge remove Judge
> Ames from the other pending case, and after removal, he would
> consolidate both cases for trial. Justice Smith said that if I was
> convicted of both Indictments, he would give me severe sentences
> to run consecutively, and to run consecutive to the current 4-to-12
> year sentence. He also made it clear to my attorney that he would
> make sure that I didn't have appellate issues if convicted.

*Id*. at 34. Petitioner wrote that he was coerced by Judge Smith's threats into pleading guilty to a

felony even though he was innocent of the charge. *Id*.

Petitioner sent a copy of his letter to the CJC to Adinolfi and asked him to use the facts

set forth in the letter to prepare a motion to withdraw his plea and recuse Judge Smith. *Id.* at 36.

In an August 16, 2000, letter to Petitioner, Adinolfi responded: "It does not appear to me that

there are any non-frivolous issues on which to file motions for recusal or withdrawal of your

Guilty Plea. Attorneys are ethically obligated not to file frivolous motions, so we cannot file the

motions you have requested unless there are some non-frivolous issues." *Id.* at 37.

On August 21, 2000, Petitioner wrote to Judge Smith to inform him that Adinolfi had told

him he would not move to withdraw the guilty plea and recuse the Judge on Petitioner's behalf.

*Id*. at 49. Petitioner requested that Judge Smith appoint a Syracuse, New York attorney to

represent him. *Id*. In an August 22, 2000, affirmation in reply to Petitioner's written request to

relieve the Cortland County Public Defender's as his assigned counsel, Adinolfi stated that

---

[7] Plaintiff sent more than one letter to the CJC complaining about Judge Smith and
claiming he had been coerced into pleading guilty. (Dkt. No. 46-1 at 57-58, 114-16.)

Petitioner and the Public Defender's Office had reached an impasse with regard to strategy

moving forward in the criminal cases in County Court. (Dkt. No. 46-1 at 55.) The specific

nature of the impasse was described as the firm belief held by the Public Defender's Office that

Petitioner's request that motions be filed for vacatur and recusal was not the correct strategy at

that time. *Id*. Adinolfi also noted that Petitioner's allegation that Adinolfi could be a witness

regarding his *pro se* motion for vacatur and recusal might have "some merit." *Id*. Adinolfi

concluded that there was good cause for the Public Defender's Office to be relieved as counsel

for Petitioner. *Id*. at 56.

On August 30, 2000, Plaintiff made a *pro se* motion for an order:

> (1) Recusing Hon. Martin E. Smith on the ground that he is
> hopelessly biased and prejudiced against Defendant – the Court
> coerced, directly and indirectly, Defendant to plead guilty on July
> 31, 2000, to the only count contained in the Indictment;
>
> (2) Vacating Defendant's plea of guilty entered on or about
> July 31, 2000, on the ground that said plea was induced by threats
> of Hon. Martin E. Smith;
>
> (3) Assigning new counsel to the Defendant on the ground
> that the Cortland County Public Defender recently filed and served
> an "Affirmation" seeking to be relieved.

*Id.* at 69. In his August 30, 2000, affidavit in support of his motion, Petitioner referenced an

August 18, 2000, affidavit he had sent to Judge Smith reiterating the circumstances of alleged

coercion and averring:

> 9.    Lastly, I have resisted a plea bargain since 1998, and but for
> the threats conveyed by my attorney and but for the comments that
> this Court made in my presence, I wouldn't have been induced to
> plead guilty to a crime that I am absolutely innocent of.
> Commendably, my attorney worked extremely hard on the defense
> of this case and I do not think that he wanted me to plead guilty,

> however, he was duty-bound to convey to me what the Court had
> said.  He left the decision up to me, but I was <u>scared to death</u> of
> serving <u>life in prison</u> for a crimes that I did not commit. . . .
> (emphasis in original)

(Dkt. No. 46-1 at 62-65.)  Petitioner also included Adinolfi's August 22, 2000, reply affirmation

in support of his motion.  *Id*. at 75-76.  The People opposed the motion in its entirety.  *Id*. at 90-

95.

Petitioner's sentencing was held before Judge Smith on September 11, 2000.  (Dkt. No.

46-1 at 153-161.)  Adinolfi appeared as Petitioner's counsel.  *Id*. at 153.  The habeas record does

not reflect the issuance of an order on Petitioner's motion to withdraw his guilty plea.  However,

it is apparent from the sentencing transcript that the motion was denied in full.  *Id*. at 153-161.

When asked by Judge Smith if he wanted to say anything before sentence was imposed,

Petitioner stated that the hospital records provided by the People revealed no indication of rape,

and he had only taken the plea because of the fear of consolidation of the two indictments before

Judge Smith.  *Id*. at 158.  Petitioner was sentenced as a second felony offender to two to four

years to run concurrently with the sentence for probation violation.[8]  *Id*. at 158-62.  After

imposing sentence, Judge Smith stated:

> I note, Mr. Carpenter, what you've just said to the Court,
> and I also note, as I've already alluded to this morning, that I find it
> beyond coincidence that you would plead guilty to sex abuse in the
> first degree and seek to withdraw your plea, then file – enter a plea
> of guilty to rape in the second degree and seeking withdrawal of
> your plea.  And the basis of your arguments with regard to both is
> you were forced into doing so by your counsel.  And except when I
> put you under oath and you pled guilty, you told me, under oath,
> that did not occur, so that speaks greatly in this Court's mind to

---

[8] Petitioner also waived his right to appeal as a part of his guilty plea.  (Dkt. No. 46-1 at
161.)

your credibility, and in short, you have none with this Court.

> It strikes me that your tactics, personal, legal tactics throughout the course of these proceedings has been nothing more – I say these proceedings, by reference, I mean including the proceedings, indictment in front of Judge Ames – nothing more than an effort on your part to engage in dilatory tactics, that is keep putting it off, putting it off, and maybe it will go away. That's the only way I can figure this ended up being the oldest indictment in Cortland County. All that being said, sentence is imposed.

(Dkt. No. 46-1 at 158-59.)

Plaintiff filed a timely notice of appeal from the judgment of conviction based upon his guilty plea on Indictment No. 98-82. *Id*. at 164.

### F. Petitioner's Sentencing on his Guilty Plea under Indictment No. 99-112

By the time Petitioner was sentenced by Judge Smith under Indictment No. 98-82, he had already been sentenced by Judge Ames under Indictment No. 99-112. (Dkt. No. 46-1 at 118-148.) Judge Ames noted at the outset of the September 6, 2000, sentencing that he had received copies of August 17 and 21, 2000, letters Petitioner had sent Judge Smith. (Dkt. No. 46-1 at 38-39, 49.) In the August 17th letter, Plaintiff had informed Judge Smith that he intended to move to withdraw his guilty plea under Indictment No. 98-82 and had included a draft affidavit. *Id*. at 40-43. The August 21st letter was the one in which Petitioner sought to have Adinolfi replaced with a Syracuse attorney on Indictment No. 98-82. *Id*. at 49.

At the sentencing, both Petitioner and Adinolfi argued that Adinolfi should be replaced as Petitioner's counsel in both criminal proceedings because attorney and client had an irreconcilable conflict regarding strategy going forward, and Adinolfi could be a witness in a hearing on Petitioner's motion to withdraw his plea under Indictment No. 98-82. *Id*. at 119-21.

Carpenter also argued that Adinolfi had been non-responsive to his telephone calls and letters subsequent to Petitioner's guilty plea on Indictment No. 98-82. (Dkt. No. 46-1 at 127-28.) The People argued against allowing Petitioner to replace Adinolfi, and Judge Ames denied the request, failing to see any conflict that would serve as an impediment to the sentencing under Indictment No. 99-112. *Id*. at 129-31.

Judge Ames also concluded that unless the plea in Indictment No. 98-82 was withdrawn by Judge Smith or overturned on appeal, he was bound by Petitioner's agreement to withdraw his motion to withdraw his guilty plea under Indictment No. 99-112. *Id*. at 124. As a result, whether or not the plea on Indictment No. 99-112 could be withdrawn hinged on what happened with Petitioner's motion to withdraw his guilty plea before Judge Smith – the motion that was subsequently denied by Judge Smith on September 11, 2000.

Finding no impediment to going forward with sentencing, Judge Ames sentenced Petitioner under Indictment No. 99-112 to a determinate term of three years and post-release supervision for five years, in accordance with the plea agreement under which Petitioner had pled guilty to Sexual Abuse in the First Degree. *Id*. at 132, 136. The three year sentence was made concurrent with the sentence being served for the probation violation and any sentence rendered on Indictment No. 98-82. *Id*. at 137. The sentence also included an order of protection in favor of petitioner's wife; an HIV test; certification as a sex offender; and a waiver of appeal except as to the limited issues for which there is always a right to appeal. *Id*. at 138-39.

Plaintiff filed a timely notice of appeal from the judgment of conviction based upon his guilty plea in Indictment No. 99-112. *Id*. at 165.

### G.   CPL § 440.10 Motions to Vacate Both Convictions

In December of 2009, Petitioner filed a *pro se* motion pursuant to CPL §440.10 to vacate the judgment of conviction under Indictment No. 99-112. (Dkt. No. 46-2 at 10-134.)  Petitioner raised numerous grounds including ineffective assistance of counsel and a claim that the People had engaged in fraudulent and illegal plea negotiations that tricked him into waiving his right to trial against his will.[9]  *Id.* at 11-12.  In February of 2010, Petitioner filed a *pro se* motion under CPL § 440.10 to vacate the judgment of conviction with regard to Indictment No. 98-82.  *Id.* at 136-230; Dkt. No. 46-3 at 2.  Among the numerous grounds raised by Petitioner was a claim that his plea had not been voluntary, knowing and intelligent.  *Id.* at 137.  In his notice of motion, Petitioner indicated that he believed his new attorney, Michael Cardinale, Esq. ("Cardinale"), would be joining him on the motion.  (Dkt. No. 46-2 at 136.)

It appears from the record that Petitioner's *pro se* § 440.10 motions were superseded by an April 6, 2010, counseled § 440.10 motion filed by Cardinale seeking to have both judgments of conviction vacated.  (Dkt. No. 46-3 at 3-132.)  The grounds raised for vacatur of Petitioner's guilty plea on Indictment No. 99-112 included: (1) the plea allocution was insufficient in that the

---

[9]  Petitioner claimed that the plea was fraudulent and illegal because Judge Ames told him that he would agree to a determinate sentence of three years and five years of post-release supervision which would run concurrently with the four to twelve year sentence for probation violation.  (Dkt. Nos. 46-2 at 14.)  In August of 2008, after learning that pursuant to Penal Law §§ 70.30(1) and 70.45.5(a), post-release supervision had to be calculated to commence upon his release from prison and would not, as he had thought, commence running as soon as he had served the three year determinate sentence, even though he was still incarcerated, Petitioner sought relief from the timing of the post-release supervision first from Judge Ames (Dkt. No. 46-1 at 203) and later in a proceeding under New York Civil Practice Rule and Laws Article 78, both without success.  *Id.* at 235-329.

Court improperly delegated its authority to conduct the plea allocution to the prosecutor; (2) the plea allocution was insufficient in that it failed to establish each element of the offense to which Petitioner pleaded guilty; (3) the guilty plea was not knowing and voluntary inasmuch as Petitioner was forced by his attorney to make admissions and plead guilty because his attorney had informed him that he would not be able to provide him with a zealous defense since his legal bill had not been completely paid; and (4) the Court represented that the five year period of post-release supervision would run concurrently with the four to twelve year sentence for probation violation, when the law required that the period commence upon his release from imprisonment. (Dkt. No. 46-3 at 7-15.)

The grounds asserted for vacatur of Petitioner's guilty plea on Indictment No. 98-82 included that: (1) Judge Smith lacked jurisdiction to adjudicate matters relating to Indictment No. 99-112, *i.e.*, requiring Petitioner to withdraw his motion to withdraw his guilty plea in that case, because he was temporarily assigned from Broome County only to handle Indictment No. 98-82; (2) Petitioner's guilty plea was not knowing and voluntary because he did not know at the time he pleaded guilty on Indictment No. 99-112 that neither the Court nor the New York State Department of Corrections could enforce the five year post-release supervision period to run concurrently with the probation violation sentence; and (3) Petitioner's guilty plea was not knowing and voluntary because he was coerced to withdraw his motion to withdraw his guilty plea under Indictment No. 99-112 by the duress of the circumstances. *Id*. at 16-21.

The counseled § 440.10 motion was denied by Judge Ames on May 10, 2010. *Id*. at 146-50. Judge Ames rejected Petitioner's two arguments that the guilty plea under Indictment 99-112 was insufficient on the grounds that a § 440.10 motion was not the proper method for

challenging the sufficiency of a plea made on the record, and the arguments were in any event

without legal merit.  (Dkt No. 46-3 at 147.)  Judge Ames also rejected Petitioner's claim that his

guilty plea on Indictment 99-112 was not voluntary and resulted from coercion by Butler.  The

claim was rejected based upon Petitioner's failure to provide any supporting evidence, as well as

Petitioner's affirmative response when asked during his plea allocution whether he was satisfied

with the services provided by Butler.  *Id*. at 148.

Petitioner's argument that he was not given the sentences promised him in his plea

agreements under Indictment Nos. 98-82 and 99-112 because of the timing of post-release

supervision was also rejected.  *Id*. at 148-49.  Judge Ames found the argument to be without

merit because the plea transcript revealed that the Court had agreed only that the three year

determinate sentence would be concurrent and also because the argument was one that should be

asserted on a direct appeal.  *Id*. at 149; *see also* Dkt. No. 46 at 226.

The County Court also rejected Petitioner's claims relating to his guilty plea under

Indictment No. 98-82.  Judge Ames rejected Petitioner's claim that Judge Smith was without

jurisdiction to require him to withdraw his motion to withdraw his guilty plea under Indictment

No. 99-112 on the grounds that a § 440.10 motion was not the proper method of challenging the

sufficiency of a plea made on the record.  Judge Ames rejected the claim on the further grounds

that requiring Petitioner's withdrawal of the motion in Indictment No. 99-112 did not constitute

an exercise of jurisdiction over Indictment No. 99-112 by Judge Smith.  *Id*.  Judge Ames also

rejected Petitioner's post-release supervision claim asserted with respect to Indictment No. 98-

82.  (Dkt. No. 46-3 at 149-50.)

The Appellate Division denied Petitioner's application to appeal from the denial of his

§ 440.10 motion on July 28, 2010.  (Dkt. No. 46-3 at 188.)

### H.  Petitioner's Direct Appeal from Both Judgments of Conviction

1. Delay in Granting Petitioner's Application to Proceed as a Poor Person and Appointing Appellate Counsel so that His Direct Appeals Could Be Perfected

Plaintiff filed timely notices of appeal from the judgments of conviction under Indictments Nos. 98-82 and 99-112.  (Dkt. No. 46-1 at 164-65.)  By letter of October 24, 2002, the Appellate Division Clerk's Office sent Petitioner an application to proceed as a poor person on his appeals.  (Dkt. No. 46-2 at 73.)  Petitioner completed and executed the application on October 31, 2002, and submitted it to the Clerk.  *Id*. at 20, 79-80.

Petitioner wrote to the Clerk's Office on November 23, 2004, requesting the dates of motions and decisions involving him in that Court.  *Id*. at 74.  The Clerk's Office responded with information on filings and decisions.  *Id*.  None of the information appears to have related to Petitioner's appeals from the judgments of conviction.  *Id*.  Petitioner continued to communicate with the Clerk's Office regarding his appeals without success.  On May 27, 2009, Petitioner sent a letter to the Clerk's Office indicating that he had filed two notices of appeal and the October 31, 2002, application to proceed as a poor person.  *Id*. at 72, 76.  Petitioner noted that a copy of the application had been provided to him with a May 10, 2006, letter from the Clerk's Office.  *Id*. at 72, 75.  He wrote "I have relentlessly over the years have written this court for an decision on this application and have been evaded from the truth."  (Dkt. No. 46-2 at 72.)

In an August 4, 2010, letter responding to a June 12, 2010, letter from Petitioner, the Assistant Deputy Clerk in the Clerk's Office informed Petitioner that they were in the process of reviewing Clerk's Office files in an attempt to clarify the circumstances of his poor person

application dated October 31, 2002. (Dkt. No. 1-4 at 8.) The letter included a request for all of Petitioner's correspondence to the Clerk's Office over the years regarding his poor person application. *Id.* Finally, on September 28, 2010, the Clerk's Office sent Petitioner a letter, informing him that his application to proceed as a poor person was being submitted for consideration by the Court on October, 4, 2010. (Dkt. No. 1 at 75.) On November 4, 2010, more than ten years after Petitioner's convictions, the Appellate Division issued Orders granting Petitioner leave to proceed as a poor person on both of his direct appeals and appointing appellate counsel to represent Petitioner on the appeals.[10] (Dkt. No. 46-3 at 190-91.)

2. Petitioner's Direct Appeal

Petitioner's combined direct appeal to the Appellate Division appears to have been perfected in or about August of 2011. (*See* Dkt. No. 46-3 at 192-252.) The issues raised on appeal with regard to both cases were: (1) whether Petitioner's guilty pleas were entered into in a voluntary, knowing, and intelligent manner; (2) whether the trial courts erred by failing to grant Petitioner's motions to withdraw his guilty pleas, or at the very least holding hearings on the issue; and (3) whether Petitioner's former attorneys rendered ineffective assistance of counsel

---

[10] One of the issues raised by Petitioner in his original Petition in No. 9:10-CV-1240, filed on October 18, 2010, was that he had been deprived of a timely direct appeal from the judgment of conviction on Indictment No. 98-82. (Dkt. No. 1 at 4.) The Second Circuit has recognized that a failure to exhaust may be excused where there has been "a substantial delay in the state criminal appeal process." *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991); *see* 28 U.S.C. § 2254(b)(1)(B)(ii) (excusing failure to exhaust where circumstances render state corrective process ineffective to protect rights of petitioner). The Court finds the ten year delay of Petitioner's direct appeal attributable to clerical errors in the Appellate Division Clerk's Office very disturbing. However, despite the delay, Petitioner did have the opportunity to seek review of non-record based claims under § 440.10 motion and ultimately to seek direct review of the record based claims on both indictments, including those claims Judge Ames had determined were record based and not the proper subject of Petitioner's § 440.10 motion.

warranting vacatur of the guilty pleas. (Dkt. No. 46-3 at 193.)

The Appellate Division affirmed both judgments of conviction on March 8, 2012. *See People v. Carpenter*, 939 N.Y.S.2d 658 (3d Dept. 2012). On Petitioner's arguments regarding his guilty plea on Indictment No. 98-82, the Appellate Division found that the record clearly reflected "a voluntary, knowing and intelligent plea without any indication of coercion," and concluded that the plea had been properly entered and that the County Court had not abused its discretion in denying Petitioner's motion to withdraw his guilty plea. *Id*. at 660. The Court also rejected Petitioner's claim that he was denied ineffective assistance of counsel, finding that "[t]he fact that counsel did not join in defendant's motion to withdraw the plea does not constitute ineffective representation." *Id*. Petitioner's remaining claims regarding ineffective assistance of counsel with respect to Indictment No. 98-82 were found to implicate matters outside the record that were more properly addressed in the context of a CPL Article 440 motion. *Id*.

Petitioner's claim that his plea under Indictment No. 99-112 was not voluntary was found to be unpreserved for appeal because Petitioner had withdrawn his motion to withdraw his guilty plea as a part of his plea agreement on Indictment No. 98-82 and had not moved to vacate the judgment of conviction. *Id*. The Appellate Court concluded that Petitioner's claim that he was denied effective assistance of counsel implicated the voluntariness of his plea, and because Petitioner failed to move to withdraw the plea or vacate the judgment of conviction, the claim was also unpreserved for review. *Id*. Petitioner's claim that Butler failed to adequately communicate with him and pressured him into pleading guilty was found not to be a proper subject for direct appeal because it involved matters outside the record. *Id*. at 661.

The issues identified for review in Petitioner's application for leave to appeal to the Court

of Appeals included: (1) whether his guilty pleas were entered into in a voluntary, knowing, and intelligent manner; (2) whether the trial courts erred in failing to grant his motions to withdraw his guilty pleas; and (3) whether his attorneys rendered ineffective assistance of counsel. (Dkt. No. 46-4 at 301-02.) The Court of Appeals denied leave to appeal on May 18, 2012. *See Carpenter*, 947 N.Y.S.2d 411 (2012).

## I. Amended Habeas Petition Relative to Indictment Nos. 98-82 and 99-112

Petitioner filed an Amended Petition in No. 9:10-CV-1240 after the Appellate Division affirmed the judgments of conviction under Indictment Nos. 98-82 and 99-112, and the Court of Appeals denied leave to appeal.[11] (Dkt. No. 35.) The grounds for relief raised by Petitioner in his Amended Petition are: (1) Petitioner's motion to withdraw his guilty plea before Judge Smith and his § 440.10 motion to vacate his judgments of conviction before Judge Ames were improperly denied in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution; (2) the People failed to disclose exculpatory evidence in violation of Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments; (3) the trial judge violated Federal Rule of Criminal Procedure 11(e)(1) during an in chambers conference with counsel by engaging in threats of retaliation if Petitioner did not accept the plea agreement being offered, and Petitioner's attorney subsequently refused to provide legal services to him allowing the court to impose its will on Petitioner by coercing him to enter a guilty plea that was not voluntary, knowing, or intelligent, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments; (4) Judge Smith lacked jurisdiction to require Petitioner to withdraw his motion to

---

[11] The Court is mindful that, as with all *pro se* pleadings, a habeas corpus petition that is filed *pro se* must be construed liberally. *See Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983).

withdraw his guilty plea under Indictment No. 99-112 as a part of his plea agreement on

Indictment No. 98-82; (5) the prosecutor improperly offered inducements on which she could not

follow through by promising Petitioner that the five year post-release supervision imposed as a

part of his plea agreement under Indictment No. 99-112 would run concurrently with the four to

twelve year sentence for probation violation; and (6) Petitioner was deprived of effective

assistance of counsel by both Butler and Adinolfi in violation of his rights under the Fifth, Sixth,

and Fourteenth Amendments. (Dkt. No. 35 at 4-7.)

### J.     Habeas Petition Relative to Indictment No. 99-112

The grounds for habeas corpus relief set forth in Petitioner's Petition in No. 9:12-CV-957

are: (1) Petitioner's guilty plea was not knowing, intelligent or wilfully made in that his attorney

forced him to plead guilty by refusing to provide trial services and indicating that he would

intentionally lose if he was forced to take the case to trial in violation of Petitioner's Fifth, Sixth,

and Fourteenth Amendment rights; (2) Petitioner was denied effective assistance of counsel in

connection with his guilty plea in violation of the Fifth, Sixth, and Fourteenth Amendments

because his counsel refused to provide representation at trial as agreed and instead acted as an

advocate for the prosecution by using threats, malicious promises, coercion, and duress to force

Petitioner to plead guilty; (3) Petitioner was improperly denied a hearing relating to non-record

events on the § 440.10 motion made prior to the time the Appellate Division ruled that certain

matters raised on Petitioner's direct appeals should be heard on a § 440.10 motion, and as a result

has been left without an opportunity to seek relief; and (4) the trial court erred in denying

Petitioner a hearing on his § 440.10 motion despite acknowledging that there were witnesses to

non-record events leading up to his involuntary plea, and the Appellate Division erred in failing

to recognize that Petitioner had filed a § 440.10 motion.  (No. 9:12-CV-957, Dkt. No. 1.)

## III.    STANDARD OF REVIEW

### A.    Exhaustion Requirement under the Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs

applications of incarcerated state court defendants seeking federal habeas corpus relief.  *See* 28

U.S.C. § 2254.  Before a federal court may consider an application for habeas corpus relief

pursuant to 28 U.S.C. § 2254, the petitioner must generally have exhausted all the remedies

available in the courts of the state in which he or she was convicted.[12] 28 U.S.C. § 2254(b)(1)(A);

*see also Cullen v. Pinholster*, 563 U.S. ___, ___,131 S.Ct. 1388, 1399 (2011) ("Section 2254(b)

requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas

relief."); *Jones v. Murphy*, 694 F.3d 225, 246-47 (2d Cir. 2012), *cert. denied*, ___ U.S. ___, 133

S.Ct. 1247 (2013) ("Under AEDPA, a prisoner in custody pursuant to a state court judgment

must generally exhaust state court remedies before seeking federal habeas corpus review.").

"Exhaustion of state remedies requires that a petitioner fairly present federal claims to the

state courts in order to give the state the opportunity to pass upon and correct alleged violations

of its prisoner's federal rights."[13]  *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011)

---

[12] Exhaustion may be excused where it appears that "there is an absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  *See* 28 U.S.C. § 2254(b)(1)(B)(i)-(ii).

[13] The ways in which a state defendant may fairly present to the state courts the constitutional nature of his or her claims include: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."  *Daye v. Attorney. General of State of N.Y.*, 696  F.2d

(citation omitted); *Daye v. Attorney General of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*) (proper exhaustion requires that both the factual and legal premises of claim be "fairly presented" to the state court). "Passage through the state courts, in and of itself, 'is not sufficient.' *Picard* [*v. Connor*, 404 U.S. 270, 275 (1971)]. To provide the State with the necessary 'opportunity,' the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and 'giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)."[14] *Wilens v. Superintendent of Clinton Correc. Fac.*, No. 11-CV-1938 (JFB), 2014 WL 28995, at *5, 2014 U.S. Dist. LEXIS 182111, at *13 (E.D.N.Y. Jan. 2, 2014).[15] Petitioner has the burden of proving exhaustion. *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998) (citations omitted).

A claim that was not fairly presented to the state courts and does not satisfy the requirements of 28 U.S.C. § 2254(b)(1) may still be "deemed" exhausted by the federal court in a habeas proceeding "if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991); *see also Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) ("when a petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement

186, 194 (2d Cir. 1982).

[14] Petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims. *O'Sullivan*, 526 U.S. at 847-48.

[15] Copies of unreported cases cited herein will be provided to Petitioner. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

would now find the claims procedurally barred, the federal habeas court should consider the claim to be procedurally defaulted.") (citation and internal quotation marks omitted).

If a claim is procedurally defaulted, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he or she can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A petitioner may demonstrate cause with "a showing that the factual or legal basis for a petitioner's claim was not reasonably available to counsel, . . . or that some interference by state officials made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Only if a petitioner can establish cause will a court proceed to consider prejudice, which requires a showing of "actual prejudice resulting from the errors of which [petitioner] complains." *United States v. Frady*, 456 U.S. 152, 168 (1982) (internal quotation marks omitted). A fundamental miscarriage of justice involves showing that the petitioner is actually innocent of the crime. *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

### B.  Mixed Petition

A habeas petition containing both exhausted and unexhausted claims is a "mixed petition." *Rhines v. Weber*, 544 U.S. 269, 271 (2005). When presented with a mixed petition, a federal court may stay the petition and hold it in abeyance to give the petitioner an opportunity to exhaust all of his claims in state court. *Id*. at 276-77. However, the court should only do so where it "determines there was good cause for the petitioner's failure to exhaust." *Id*. Otherwise, a federal court must dismiss a mixed petition in its entirety on exhaustion grounds,

*Rose v. Lundy*, 455 U.S. 509 (1982), or allow petitioner to withdraw the unexhausted claims.

*Rhines*, 544 U.S. at 278. In addition, "[a]n application for a writ of habeas corpus may be denied

on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the

courts of the State."[16] 28 U.S.C. § 2254(b)(2); *see also Pratt v. Greiner*, 306 F.3d 1190, 1197

(2d Cir. 2002).

Petitioner's habeas petitions are both mixed petitions containing exhausted and

unexhausted claims. As discussed in detail below, because the Court finds Petitioner's

unexhausted claims to be without merit, no recommendation will be made to either stay one or

both of the petitions while Petitioner exhausts, or to dismiss the petitions in their entirety.

### C.     Federal Habeas Corpus Review

Under the AEDPA, an application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated
> on the merits in State court proceedings unless the adjudication of
> the claim – (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254(d). Recognizing the principle that "[s]tate courts are adequate forums for the

vindication of federal rights. . . ., AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. ___,

___134 S.Ct. 10, 15-16 (2013).

---

[16] In *Rhines v. Weber*, 544 U.S. 269, 277 (2005), the Supreme Court determined it would
be an abuse of discretion to stay a mixed petition when the unexhausted claims are "plainly
meritless."

"For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). Where AEDPA's deferential standard of review applies, "[a] state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." *Bierenbaum v. Graham*, 607 F.3d 36, 48 (2d Cir. 2010),*cert. denied*, 131 S.Ct. 1693 (2011) (citing 28 U.S.C. § 2254(e)(1)). "[A] state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 293 (2010). Claims not adjudicated on the merits in state court are not subject to the AEDPA deferential standard of review and are reviewed *de novo*. *See Cone v. Bell*, 556 U.S. 449, 472 (2009).

In determining whether a state court has adjudicated a claim "on the merits," a federal habeas corpus court must classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law. *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006). Decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

A decision "on the merits" is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme Court case with materially indistinguishable facts.[17] *Williams v. Taylor*, 529 U.S. 362, 405-06

---

[17] "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decisions.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S.

(2000).  A state court unreasonably applies federal law when it correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "It is settled that a federal habeas corpus may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'"[18] *Nevada v. Jackson*, ___ U.S. ___, 133 S.Ct. 1990, 1992 (2013) (quoting *Harrington v. Richter*, 562 U.S. ___, ___,131 S.Ct. 770, 786 (2011)).  Where a claim has been adjudicated on the merits by a state court, federal habeas review is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen*, 131 S.Ct. at 1398.

Federal habeas corpus review is limited to determining whether petitioner is in custody in violation of the Constitution, laws, or treaties of the United States.[19]  *See* 28 U.S.C. §§ 2241(c), 2254(a); *see also Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.").  Federal habeas relief does not "lie for errors of state law."  *Swarthout v. Cooke*, ___ U.S. ___, 131 S. Ct.

---

362, 412 (2000)). "[F]ederal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002). "[C]ircuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court . . . and cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, ___ U.S ___, 132 S.Ct. 2148, 2155  (2012) (citation and internal quotation marks omitted).

[18] *See also Cullen*, 131 S.Ct. at 1399 (The § 2254(d) standard of review is a "'difficult to meet,' *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011), and 'highly deferential standard' [which] demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*).").

[19] Petitioner has the burden of proving by a preponderance of the evidence that he is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); *see also Smalls v. Batista*, 191 F.3d 272, 278 (2d Cir. 1999).

859, 861 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S.Ct. at 786; *see also Jean v. Greene*, 523 F. App'x 744, 747 (2d Cir. 2013) ("Under AEDPA, the deference we ascribe to the determination of the state court is 'high[ ],' and we must give the state court's decision 'the benefit of the doubt.'") (quoting *Cullen*, 131 S. Ct. at 1398).

## III. ANALYSIS OF CLAIMS ASSERTED BY PETITIONER IN NO. 9:10-CV-1240[20]

### A. Claim that Petitioner's Guilty Plea to Rape in the Second Degree Under Indictment No. 98-82 was not Voluntarily, Knowingly, and Intelligently Made

Petitioner claims that he was coerced into pleading guilty as a result of threats made by Judge Smith during an in-chambers plea discussion with counsel regarding Indictment Nos. 98-82 and 99-112. (Dkt. No. 35 at 4-5.) According to Petitioner, Adinolfi informed him of Judge Smith's threats, and the threats induced him to plead guilty. (Dkt. No. 46-4 at 54.)

Petitioner asserted the claim that his guilty plea under Indictment No. 98-82 was not voluntarily, knowingly, and intelligently made in his direct appeal. *Id*. at 234-37. Respondent has conceded that the claim was exhausted in state court.[21] (Dkt. No. 44 at 30.)

_____

[20] Petitioner has claimed in both of his habeas proceedings that his guilty plea under Indictment No. 99-112 was not voluntary, knowing, and intelligent, and that he was entitled to a hearing on the claim asserted in his counseled CPL § 440.10. The Court will address those claims in its analysis of the Petition filed under No. 9:12-CV-957.

[21] On his direct appeal, Petitioner did not identify a specific constitutional right as the basis for his claim that his guilty plea was not voluntarily, knowingly, and intelligently made, nor did he cite federal case law employing constitutional analysis. Respondent's concession of exhaustion is based on Petitioner having asserted the plea-coercion claim in "terms that brought to mind federal constitutional rights." (Dkt. No. 44 at 30.) *See Daye*, 696 F.2d at 194 (identifying "assertion of the claim in terms so particular as to call to mind a specific right

29

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient knowledge of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970).[22] "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A guilty plea must be voluntary, knowing, and intelligent "because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." *Parke v. Raley*, 506 U.S. 20, 29 (1973). "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."[23] *Machibroda v. United States*, 368 U.S. 487, 493 (1962).

---

protected by the Constitution" as a way to fairly apprise the state court of the constitutional nature of a claim). Because Respondent has unequivocally conceded exhaustion, the Court need not determine whether petitioner adequately alerted the state courts to the federal nature of his plea-coercion claim for purposes of habeas review. *See Cornell v. Kilpatrick*, 665 F.3d 369, 376-77 (2d Cir. 2011) (where respondent unequivocally conceded, albeit erroneously, that a habeas petitioner exhausted a claim in the state courts, exhaustion is deemed waived and the claim may be considered on the merits).

[22] The requirement that a guilty plea be a voluntary and intelligent choice derives from the Fifth Amendment privilege against compulsory self-incrimination. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

[23] A guilty plea is not coerced because a defendant is confronted with the threat of conviction and a severe punishment. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas.") (citation and internal quotation marks omitted).

1.      Petitioner's Guilty Plea

A court may determine whether a defendant knowingly and voluntarily entered into a plea bargain by, among other things, his allocution statements. *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). Sworn statements made by a defendant in entering a guilty plea carry "a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge in accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" to withdraw the plea or vacate the judgment of conviction based on the plea. *Id*. at 73-74.

On Petitioner's direct appeal, the Appellate Division rejected his contention that his guilty plea was not intelligent, knowing, and voluntary because it was procured by duress from Judge Smith, finding that "[w]ith regard to the 1998 indictment, the record clearly reflects a voluntary, knowing and intelligent plea without any coercion. In fact, defendant stated during the colloquy that he had not been threatened or coerced into entering his plea. Accordingly, we find that the plea was properly entered. . . ." *Carpenter*, 939 N.Y.S.2d at 660. The record of Petitioner's plea allocution supports the conclusion reached by the Appellate Division.

Judge Smith fully explained the terms of the plea agreement to Petitioner. (Dkt. No. 46-1 at 17-20.) After Petitioner was sworn in, the Judge informed him that by pleading guilty he would be giving up his rights to a trial by jury, to call witnesses to testify on his behalf, and to present a defense, and asked Petitioner whether he understood the rights he would be giving up. *Id*. at 21-22. Petitioner responded in the affirmative. *Id*. at 22. Petitioner acknowledged that no

31

one had promised him anything other than the sentences proposed under Indictment Nos. 98-82 and 99-112. *Id.* at 22-23. The record from Petitioner's July 31, 2000, plea allocution reveals that Judge Smith questioned him further and Petitioner responded as follows:

| | |
|---|---|
| Court: | Has anybody threatened you, forced you, coerced you in any way in order to get you to plead guilty? |
| Defendant: | No, your Honor. |
| Court: | Are you telling me you're pleading guilty after having conferred with your attorney? |
| Defendant: | Yeah. |
| Court: | And this plea that you're entering freely and voluntarily, this is what you want to do? |
| Defendant: | Yes, your Honor. |
| Court: | And are you satisfied with the services of your attorney in this case? |
| Defendant: | Yes, your Honor. |
| Court: | Do you understand that . . . your plea of guilty will have the same legal effect, this will mean exactly the same thing as if you did go to trial on August 14th and as a result at the end of that trial, a jury found you guilty of this charge, do you understand? |

\*   \*   \*

| | |
|---|---|
| Defendant: | Yes. |
| Court: | Do you also realize, sir, by pleading guilty you're going to be admitting to me on April 26th, 1998, in Cortland County you engaged in sexual intercourse with a female who was less than 14 years old, specifically – |

\*   \*   \*

|          |                                                        |
|----------|--------------------------------------------------------|
| Court:   | . . . Those are the legal admissions you make if you plead guilty, you understand that? |
| Defendant: | Yes, your Honor. |

*Id*. at 23-25. After Petitioner responded in the affirmative to Judge Smith's question whether Petitioner admitted having sexual intercourse with the victim, the Court accepted his plea of guilty to rape in the second degree.[24] *Id*. at 28.

### 2. Circumstances Surrounding Petitioner's Guilty Plea

While the voluntariness of a guilty plea "can be determined only by considering all of the relevant circumstances surrounding it," *Brady*, 379 U.S. at 750, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001) (citation and internal quotation marks omitted).

In support of his *pro se* motion to vacate his guilty plea under Indictment No. 98-82 on the grounds it was made under duress, Petitioner claimed that he had always resisted pleading guilty because he was innocent and had only done so because of Judge Smith's threats. (Dkt. No. 46-4 at 55.) However, in a letter to ADA Franklin, dated June 1, 2000, nearly two months before Petitioner's guilty plea, Adinolfi stated that Petitioner had indicated to him that he would plead guilty to rape in the second degree on Indictment No. 98-82, conditioned upon a sentence of one and a half to three years, to run concurrently with his sentences on the probation violation and Indictment No. 99-112. (Dkt. No. 46 at 240.)

---

[24] Petitioner requested an opportunity to speak with his counsel privately before admitting that he had sexual intercourse with the victim. (Dkt. No. 46-1 at 26.) Judge Smith granted the request. *Id.*

At his September 11, 2000, sentencing, Petitioner claimed his innocence was established by the victim's hospital records which did not establish penetration and showed no semen, no hair, no sexually transmitted disease, no trauma, and no indication of rape.[25] (Dkt. No. 46-1 at 158.) However, the records did reflect the presence of sperm consistent with Petitioner's DNA on the victim's underwear. (Dkt. No. 46 at 32-33, 43-44.) In addition, the Appellate Division, in reinstating the second degree rape charge dismissed by Judge Avery, concluded that there was legally sufficient evidence before the grand jury to support the element of penetration required for a rape indictment. *People v. Carpenter*, 702 N.Y.S.2d 228, 229 (3d Dep't 2000).

Petitioner also contends that an affirmation submitted by Adinolfi following Petitioner's guilty plea under Indictment No. 98-82 supports his claim that he was coerced to plead guilty by Judge Smith's threats.[26] (Dkt. No. 50 at 10.) In the affirmation submitted by Adinolfi, in which he requested that the Public Defender's Office be relieved as counsel for Petitioner in both cases, Adinolfi identified as one reason for the request that "[t]he defendant also alleges, possibly with some merit, that your affiant could be a witness regarding some of the claims in his *pro se* motions for vacatur and recusal of Hon. Martin Smith." (Dkt. No. 46-4 at 59.) Petitioner has

---

[25] Petitioner claims he never would have pleaded guilty if he had seen the medical reports on the victim. (Dkt. No. 50 at 21.) However, the hospital records were turned over to defense counsel in February of 2000, and Petitioner did not plead guilty until July 31, 2000. (Dkt. Nos. 46 at 72; 46-1 at 20-28.)

[26] *See Brady v. United States*, 397 U.S. 742, 751-52 (1970) (a guilty plea is constitutionally valid where it is "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."); *see also Gaines v. Murray*, No. 03-CV-016A, 2008 WL 4890249, at *5, 2008 U.S. Dist. LEXIS 94809, at 15 (W.D.N.Y. Nov. 12, 2008) ("Every defendant involved in plea negotiations suffers the threat of conviction (often of greater charges or with a greater penalty) and must face such 'difficult choices.'") (citing *Bordenkircher,* 434 at 364).

34

interpreted Adinolfi's statement as support for his claim that Judge Smith made threats during the in-chambers conference with counsel. (Dkt. No. 50 at 10.) However, it appears that in his affirmation Adinolfi went no further than to agree that there was some merit in Petitioner's argument that he might be a witness, not that he would testify that Judge Smith had issued threats. That limited interpretation finds support in Adinolfi's refusal to file a motion to withdraw Petitioner's guilty plea on Indictment No. 98-82 and to recuse Judge Smith because there were no "non-frivolous issues on which to file motions for recusal or withdrawal of [Petitioner's] Guilty Plea," and "[a]ttorneys are ethically obligated not to file frivolous motions."[27] (Dkt. No. 46-1 at 36-37.)

3.    Court's Recommendation

Evidence supporting Petitioner's self-serving statements contradicting his plea allocution

---

[27] A statement made by Adinolfi at Petitioner's sentencing before Judge Ames under Indictment No. 99-112 on September 6, 2000, might arguably be construed as contradicting, in part, his letter of August 16, 2000, to Petitioner. (Dkt. No. 46-1 at 121.) In explaining why he believed there was a conflict of interest preventing him from continuing to represent Petitioner, Adinolfi stated that:

> [O]ne of the motions that Mr. Carpenter would like to make and which may have some merit, I would be a witness to it, a vacator motion before Judge Smith. Judge Smith in conference pretty much aligned that case, I believe its 98-82, with this case, 99-112, in that he was saying that if a plea was not entered in that court – in his court, and if vacator were granted in this court, he might take both cases and consolidate them for trial. And since as I guess I would likely be a witness to a vacator motion that Mr. Carpenter's succeeding assigned counsel would make, I can't be his attorney any more.

*Id*. at 121-22. Adinolfi did not, however, describe Judge Smith's indication that he might consolidate the two cases for trial as a threat to Petitioner, nor did he suggest that Judge Smith had made any threats that could be found to have coerced Petitioner to plead guilty against his will. *Id*.

adequate to overcome the strong presumption of verity of statements made by him in his plea

allocution, *see Blackledge*, 431 U.S. at 74, is clearly missing from the state court record. There is

nothing in the state court record or relevant law that would render the state court's determination

on Petitioner's guilty plea so erroneous that "there is no possibility fairminded jurists could

disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter*,

131 S.Ct. at 786. Therefore, the Court recommends that Petitioner's claim that his guilty plea

under Indictment No. 98-82 was not voluntary, knowing, and intelligent be denied.[28]

**B. Claim that Judge Smith Violated Federal Rule of Criminal Procedure 11(c)(1) Prohibiting the Court From Participating in Plea Discussions**

Petitioner claims that Judge Smith violated Federal Rule of Criminal Procedure 11(c)(1)

by actively participating in the plea discussions, and that his coercive tactics forced Adinolfi to

quit representing Petitioner and forced him to plead guilty to a charge of which he was innocent

under Indictment No. 98-22 and to agree to the withdrawal of his motion to withdraw his pending

guilty plea under Indictment No. 99-112. (Dkt. Nos. 35 at 5; 35-1 at 10-14.)

Rule 11(c)(1), governing guilty pleas, prohibits judicial involvement in plea discussions.

*United States v. Davila*, 569 U.S. ___, ___,133 S.Ct. 2139, 2146 (2013). "[T]he prohibition was

included out of concern that a defendant might be induced to plead guilty rather than risk

displeasing the judge who would preside at trial." *Id*. Rule 11(c)(1) was adopted as a

---

[28] *See United States v. Davis*, 48 F. App'x 809, 811 (2d Cir. 2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with advice of counsel . . . . Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence.").

prophylactic measure. *Id*. at 2149. The Rule was not "impelled by the Due Process Clause or any other constitutional requirement." *Id*. There is no clearly established federal law providing otherwise.

Furthermore, Rule 11(c)(1) does not apply to state court judges. *McMahon v. Hodges*, 382 F.3d 284, 289 n.5 (2d Cir. 2004). State court judges in New York are permitted to participate in plea negotiations with defendants. *Id*. (citing *People v. Fontaine*, 319 N.Y.S. 2d 847 (1971)); *see also Bivens v. Poole*, 302 F. App'x. 598, 599 (9th Cir. 2008) ("[T]here is no clearly established federal law, as determined by the Supreme Court of the United States, prohibiting a state court's participation in plea negotiations"). Inasmuch as federal habeas review is limited to whether petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, which does not include Rule 11(c)(1), the Court recommends that Petitioner's claim for violation of the Rule be denied.

### C. Ineffective Assistance of Counsel Claim on Indictment No. 98-82

Petitioner has asserted an ineffective assistance counsel claim with respect to Adinolfi's legal representation on Indictment No. 98-82. (Dkt. No. 35.) Petitioner claims that Adinolfi quit representing him and refused to provide him with legal services at the time he pleaded guilty under the indictment before Judge Smith, thereby allowing the Judge to force his will on Petitioner by forcing him to plead guilty. *Id*. at 5, 7; Dkt. Nos. 35-1 at 2-3, 12; 50 at 41-42, 44.

On his direct appeal, Petitioner claimed that Adinolfi had provided ineffective assistance of counsel by: "(1) advising him to accept the plea deal based upon Judge Smith's threats and his political power; (2) acting at cross-purposes with Mr. Carpenter when Mr. Carpenter moved to withdraw his guilty plea; and (3) failing to adequately communicate with him after Mr.

Carpenter's guilty plea was entered." *Id*. at 247-249. The Appellate Division rejected

Petitioner's contention that Adinolfi's refusal to join in Petitioner's motion to withdraw his guilty

plea constituted ineffective representation. *Carpenter*, 939 N.Y.S2d at 660.

The Court found that the remainder of Petitioner's ineffective assistance claims with

regard to Adinolfi implicated matters outside the record more properly addressed in a CPL

Article 440 motion. *Id*. Petitioner did not assert an ineffective assistance of counsel claim in the

counseled CPL § 440.10 motion made and denied before his direct appeal and has made no

further CPL § 440.10 motions. (Dkt. No. 46-3 at 3-21, 52-53.)

Respondent has argued that Petitioner's ineffective assistance of counsel claim against

Adinolfi is unexhausted except as to his claim that Adinolfi refused his request to move for

withdrawal of Petitioner's guilty plea, which is exhausted.[29] (Dkt. No. 44 at 30.) Respondent

_____

[29] In the brief filed on Petitioner's behalf on his direct appeal, the sole reference to a federal constitutional right to the effective assistance of counsel was the statement "[t]he right to effective assistance of counsel is guaranteed by both the federal and state constitution" followed by a citation to *People v. Baldi*, 444 N.Y.S.2d 893, 897 (1981), in which the New York Court of Appeals acknowledged a right to the effective assistance of counsel under the Sixth Amendment. (Dkt. No. 46-3 at 244.) Petitioner's argument of the issue was couched in state law terms and relied solely upon New York cases analyzing the claim under New York law and the New York Constitution, with no mention of *Strickland v. Washington*, 466 U.S. 668 (1984) and no application of the analysis to be applied to Sixth Amendment ineffective assistance of counsel claims set forth therein. Thus, there is some doubt in the Court's mind whether Petitioner fairly presented a federally based ineffective assistance of counsel claim regarding Adinolfi to the state court on his direct appeal. *See Cornell,* 665 F.3d at 376 ("mere mention of ineffective assistance of counsel . . . without more was insufficient to alert the New York courts to the possible federal basis of the claim.") (citation and internal quotation marks omitted); *Gantt v. Martuscello*, No. 9:12-CV-657 (MAD/CFH), 2014 WL 112359, at *9, 2014 U.S. Dist. LEXIS 183258, at *18 (N.D.N.Y. Jan. 10, 2014) (finding a failure to exhaust ineffective assistance of counsel claim where petitioner had relied upon state cases that did not employ a federal constitutional analysis and did not cite federal cases employing the relevant constitutional analysis). Nonetheless, because Respondent has conceded exhaustion as to Adinolfi's refusal to move to withdraw Petitioner's guilty plea, the exhaustion requirement will be deemed waived as to that claim. *See Cornell,* 665 F.3d at 376-77 (exhaustion is waived when respondent unequivocally concedes

38

asserts that Petitioner's claims that Adinolfi advised him to accept the plea deal based upon Judge Smith's threats and his political power and failed to adequately communicate with him after his guilty plea was entered, are unexhausted because Petitioner has not filed a CPL § 440.10 motion subsequent to his direct appeal.  *Id*. at 34.

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const., amend VI.  "[T]he right to counsel is the right to the effective assistance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  The Sixth Amendment right to counsel extends to the plea-bargaining process and sentencing.  *Lafler v. Cooper*, 566 U.S. ___, ___,132 S.Ct. 1376, 1384 (2012).  To prevail on an ineffective assistance of counsel claim in connection with a guilty plea, a habeas petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires a showing that his or her counsel's performance was deficient, and that the deficient performance caused actual prejudice to the petitioner.[30]  *Hill v. Lockhart*, 474 U.S. 52 (1985).

Recently, in *Titlow*, ___ U.S. __, 134 S.Ct. 10, 13 (2013), the Supreme Court, reiterated the requirement that federal courts use a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." (quoting *Cullen*, 131 S.Ct. at 1403.  In *Richter*, 131 S.Ct. 770, 786, addressing the *Strickland* standard and its relationship to the AEDPA, the Supreme Court explained:

---

exhaustion).

[30]  "Counsel should be strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment."  *Strickland*, 666 U.S at 690.

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*], 466 U.S. at 688 [ ]. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*., at 689 [ ]. The challenger's burden is to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*., at 687 [ ].

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id*. at 693 [ ]. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*., at 687 [ ].

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. [356, 371], 130 S.Ct. 1473, 1485 [ ] (2010). . . . Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom." *Strickland*, 466 U.S., at 690.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [because] the standards created by *Strickland* and § 2254(d) are both "highly deferential" . . . and when the two apply in tandem, review is "doubly" so. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. (some internal citations omitted).

1.     Refusal to File a Motion to Withdraw Petitioner's Guilty Plea[31]

Adinolfi refused Petitioner's request to file a motion to withdraw his guilty plea and for

Judge Smith's recusal on Indictment No. 98-82 because in his opinion, the motion would be

frivolous.  (Dkt. No. 46-1 at 36-37.)  Effective assistance of counsel does not require the filing of

every possible motion, rather only those that have a solid foundation.  *United States v. Nersesian*,

824 F.2d 1294, 1322 (2d Cir. 1987).  "Counsel is certainly not required to engage in the filing of

futile or frivolous motions."  *Id.*; *see also Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("The

failure to include a meritless argument does not fall outside the 'wide range of professionally

competent assistance' to which Petitioner was entitled.") (quoting *Strickland*, 466 U.S. at 690)

(additional citation omitted); *United States v. Caputo*, 808 F.2d 963, 967 (2d Cir. 1987) (holding

that "trial counsel . . exercised sound professional discretion by declining to make a plainly

frivolous suppression motion"); *Bristol v. Superintendent*, No. 9:04-CV-1230 (FJS), 2008 WL

2097160, at *14, 2008 U.S. Dist. LEXIS 40388, at *43 (N.D.N.Y. May 19, 2008) (counsel's

performance cannot be deemed deficient for failing to bring a frivolous motion).

Unlike this Court, Adinolfi was involved in all of the relevant proceedings regarding

Petitioner's guilty plea, had knowledge of non-record based matters, interacted with Petitioner

and opposing counsel in connection to the guilty plea, and was present at the in-chambers

conference in which Judge Smith allegedly made the threats that Petitioner contends forced him

to plead guilty.  Adinolfi was, therefore, in a better position than this Court to determine that the

---

[31]  In his Traverse, Petitioner denies he is challenging Adinolfi's refusal to move to
withdraw his guilty plea under Indictment No. 98-82 in habeas proceeding No. 9:10-CV-1240.
(Dkt. No. 50 at 48.)  Because of Petitioner's *pro se* status and because the claim was raised on
Petitioner's direct appeal, the Court nonetheless considers it.

motion Petitioner wanted him to make to withdraw the guilty plea was frivolous. *See Richter*, 131 S.Ct. at 788 (explaining why counsel's knowledge of the relevant proceedings warrants a deferential standard of review of claims of ineffective assistance of counsel).

Furthermore, the state court record is devoid of evidence supporting Petitioner's conclusory assertion that Judge Smith issued threats that coerced him to plead guilty, or any other factually or legally supported rationale for allowing Petitioner to withdraw his guilty plea. In sum, the state court record supports a finding that "[Adinolfi] properly declined to join in [Petitioner's] *pro se* motion to withdraw his plea since the motion lacked merit, and appointment new counsel was not required." *See Hines v. Miller*, 318 F.3d 157, 161, 163 (2d Cir. 2003) ("[T]he [Supreme] Court has never specifically addressed a claim . . . that [a] petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea . . . or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest [during a motion for plea withdrawal] adversely affected counsel's performance.") Therefore, applying the "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt," *Cullen*, 131 S.Ct. 1403, the Court recommends that Petitioner's claim that Adinolfi's refusal to join him in moving to withdraw his guilty plea violated his Sixth Amendment right to counsel be denied.

2.     <u>Ineffective Assistance of Counsel Claims that are Not Record Based</u>

"To properly exhaust an ineffective assistance of trial counsel claim that relies on evidence outside the pretrial and trial record . . . the petitioner must raise it as part of a motion to

vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division."[32]

*Griffin v. Suffolk County*, No. 13-CV-4375 (JFB), 2013 WL 6579839, at *3, 2013 U.S. Dist. LEXIS 176421, at *7 (E.D.N.Y. Dec. 16, 2013). Petitioner's counseled § 440.10 motion did not include a claim of ineffective assistance of counsel against Adinolfi regarding his representation of Petitioner on his guilty plea under Indictment No. 98-82, or Adinolfi's alleged failure to communicate with Petitioner after the plea was entered. (Dkt. No. 46-3 at 7-21.)

Inasmuch as those ineffective assistance claims were not raised in the § 440.10 motion and were not decided on the merits on Petitioner's direct appeal because they were not record-based, *Carpenter*, 939 N.Y.S.2d at 660, Respondent is correct that the claims have not been exhausted. (Dkt. No. 44 at 34.) The Court also agrees with Respondent that those claims are not procedurally barred in state court. CPL § 440.10, the proper vehicle for challenging ineffective assistance of counsel claims that rely on evidence outside the record, has no statute of limitations. *See Griffin*, 2013 WL 6579839, at *3. Section 440.10(3)(c) does allows a state court to deny a motion to vacate a judgment where "[u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so." However, since denial is discretionary, the provision does not impose an absolute bar on successive motions. *See Bravo v. Unger*, No. 10 CV 5659 (VB), 2014 WL 201472, at *3, 2014 U.S. Dist. LEXIS 6349, at *9 (S.D.N.Y. Jan. 16, 2014). Therefore, however

---

[32] Claims are record-based "when a reviewing court could conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that would need to be developed through a post-conviction motion pursuant to CPL § 440.10." *Chatmon v. Mance*, No. 07-CV-9655 (KMK)(GAY), 2011 WL 5023243, at *9 n.5, 2011 U.S. Dist. LEXIS 121453, at *26 n.5 (Oct. 20, 2011) (citation and internal quotation marks omitted).

unlikely, it is not impossible that a state court would consider a § 440.10 motion regarding Petitioner's non-record based claims of ineffective assistance against Adinolfi.

Even though Petitioner's claim may not be procedurally barred, because Petitioner cannot satisfy either prong of the *Strickland* standard, the claim is plainly without merit. Therefore, the Court has concluded that granting a stay of Petitioner's habeas proceeding so that he can attempt to exhaust the claim in a state court § 440.10 motion would be inappropriate. *See Rhines*, 544 U.S. at 277 (staying a mixed petition when unexhausted claims are "plainly meritless" is an abuse of discretion); *Gantt v. Martuscello*, No. 9:12-CV-657, 2014 WL 112359, at *7, 2014 U.S. Dist. LEXIS 183258, at *18 (N.D.N.Y. Jan. 10, 2014) (an unexhausted claim that is not procedurally barred because it could be presented in a state court § 440.10 motion should be dismissed if it is without merit rather than allowing a petitioner to pursue it).

In his plea allocution, Petitioner answered in the affirmative when asked if he was satisfied with the services of his counsel, stated under oath that he was pleading guilty freely and voluntarily and that no one had forced or coerced him into it, and admitted his guilt. (Dkt. No. 46-1 at 28.) *See Blackledge*, 431 U.S. at 74.

On his direct appeal, Petitioner argued that Adinolfi had rendered ineffective counsel by advising him to accept the plea agreement under Indictment No. 98-82 because of Judge Smith's threats. (Dkt. No. 46-3 at 247-48.) However, Petitioner's brief contains no citation to the record supporting the claim that Adinolfi advised him to plead guilty. *Id*. at 1-61. In his Amended Petition and supporting Memorandum of Law in proceeding No. 9:10-CV-1240, Petitioner claims that Adinolfi quit on him after relaying Judge Smith's threats, despite Petitioner begging him to defend him at trial, leaving Petitioner to fend for himself with regard to the guilty plea.

(Dkt. Nos. 35 at 5; 35-1 at 12.)  In his Traverse, Petitioner contends that Adinolfi forced him to plead guilty.  (Dkt. No. 50 at 44.)   Neither claim finds support in the state court record.

In fact, Petitioner's non-record based claims that Adinolfi either advised or forced him to plead guilty are contradicted by Petitioner's August 18, 2000, affidavit in support of his *pro se* motion to withdraw his guilty plea under Indictment No. 98-82.  In the affidavit, Petitioner wrote that "[c]ommendably, my attorney worked extremely hard on the defense of this case and I do not think he wanted me to plead guilty, however, he was duty-bound to convey to me what the Court had said.  He left the decision up to me but I was <u>scared to death</u> of serving <u>life in prison</u> for crimes that I did not commit." (emphasis in original).  (Dkt. No. 46-1 at 65.)  *See Harris v. Hulihan*, No. 11 Civ. 3019 (RA)(MHD), 2012 WL 5265624, at *14, 2012 U.S. Dist. LEXIS 152361, at *38 (S.D.N.Y. Aug. 8, 2012) ("any advice about the likelihood of prevailing at trial is an important part of the decision-making process related to a plea offer.").

Petitioner's non-record based claim that Adinolfi quit on him at the time of the plea on July 31, 2000, is also contradicted by the state court record.  Petitioner's August 14, 2000, letter to Adinolfi asking him to prepare a motion to vacate the guilty plea reveals that Petitioner still considered Adinolfi to be his counsel after the guilty plea.  *Id*. at 36.  In addition, Petitioner's August 17, 2000, letter to Judge Smith identifies Adinolfi as his counsel on Indictment No. 98-82.  *Id*. at 38.  Although Adinolfi declined to make the motion, the letters  clearly contradict Petitioner's claim that Adinolfi quit representing him on the day of the plea.  *Id*. at 37.

Even if Adinolfi did advise Petitioner to plead guilty, Petitioner has failed to establish that Adinolfi's representation in connection with his guilty plea fell below an objective standard of reasonableness, *see Strickland*, 466 U.S. at 687-88, because under the circumstances, the plea

bargain was quite favorable to Petitioner. Petitioner had been indicted on multiple counts under Indictment No. 98-82, and his plea bargain allowed him to plead to only one charge, almost certainly reducing the prison sentence that would have been imposed had he gone to trial and been convicted on all counts. (Dkt. No. 46-3 at 253-55.) In addition, the plea bargain allowed Petitioner to serve his sentence concurrently with the four to twelve year sentence he was already serving on the probation violation and his sentence under Indictment No. 99-112. *See Belle v. Superintendent*, No. 9:11-CV-0657 (NAM), 2013 WL 992663, at *13, 2013 U.S. Dist. LEXIS 34481, at *36-37 (N.D.N.Y. Mar. 13, 2013) (the highly favorable outcome as a result of the plea agreement was found to belie petitioner's ineffective assistance claims).

Finally, even assuming, *arguendo*, that Adinolfi's performance fell below an objective standard of reasonableness, habeas relief would not be warranted because of Petitioner's failure to show prejudice. "In the context of a guilty plea, the defendant must show a reasonable possibility that but for counsel's errors the outcome would have been different – *i.e.*, the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence." *Belle*, 2013 WL 992663, at *13 (citing *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985)). Plea negotiations had been ongoing between Adinolfi and the prosecution prior to the time Petitioner pleaded guilty, and Petitioner's guilty plea was not significantly different than the plea proposal to which Carpenter had agreed according to Adinolfi's June 1, 2000, letter to ADA Franklin. (Dkt. No. 46 at 240, 242.) Furthermore, while conviction may not have been certain, the finding of Petitioner's sperm on the victim's underwear does not allow for a finding that he would likely have been acquitted, or would have received a more favorable sentence. Moreover, there is no indication in the state court record

that even if Adinolfi did fail to communicate adequately with Petitioner following his guilty plea, that failure prejudiced Petitioner in any way.

In light of the foregoing, the Court recommends that Petitioner's unexhausted ineffective assistance of counsel claims relating to Adinolfi's representation on Indictment No. 98-82 be dismissed as entirely without merit.

### D. Claim that Judge Smith Lacked Jurisdiction to Require Petitioner to Withdraw His Motion to Withdraw his Guilty Plea Under Indictment No. 99-112

In his counseled § 440.10 motion, denied by Judge Ames, Petitioner argued that because the order of assignment from the Sixth Judicial District assigned Judge Smith to act as the County Court Judge solely for the purpose of handling Indictment No. 98-82, Judge Smith went beyond his geographic jurisdiction in requiring Petitioner to withdraw his pending motion to withdraw his guilty plea under Indictment No. 99-112 as a part of his plea agreement under Indictment No. 98-82. (Dkt. No. 46-3 at 15-18.) Petitioner claims that, as a result, his guilty plea is null and void. *Id.*

Petitioner asserted the claim only in terms of state law, and Judge Ames, in rejecting the claim on the merits, gave no indication the federal constitution was implicated. (Dkt. No. 46-3 at 149.) Judge Ames found in the alternative that the claim was record based and should be raised on direct appeal. Petitioner did not include the claim on his subsequent direct appeal. *Id.* at 192-252.

Proper exhaustion requires that a prisoner alert the state court to the federal nature of a claim, so that the state courts will have a full opportunity to resolve any constitutional issues. *O'Sullivan*, 526 U.S. at 845. Since Petitioner presented the jurisdiction argument solely in state

law terms, he failed to exhaust the claim for purposes of federal habeas review. Furthermore, the claim would be found procedurally barred by the state court because it is record-based, and Petitioner has offered no justification for his failure to raise it on the direct appeal. *See Perez*, 510 F.3d at 390 (when state court would find a petitioner's unexhausted claim to be procedurally barred, the federal habeas court should consider it to be procedurally defaulted.) Petitioner has not demonstrated cause for the default, since there is no apparent reason in the state court record why the claim could not have been raised on his direct appeal. *Coleman*, 501 U.S. at 750. In addition, Petitioner has failed to establish actual innocence. *See Sweet*, 353 F.3d at 141.

Petitioner's jurisdiction claim is also without merit. "A violation of [a state's] laws allocating . . . jurisdiction among its various counties does not create a federal constitutional issue. As we stated in *United States v. Mancusi*, 415 F.2d 205, 209 (2d Cir. 1969), 'no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from provisions of state law.'"[33] *United States ex rel. Roche v. Scully*, 739 F.2d 739, 741-42 (2d Cir. 1984). Therefore, Judge Ames determination of Petitioner's jurisdictional claim on the merits was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and the Court recommends that Petitioner's jurisdiction claim be

---

[33] New York State Constitution Art. 6, § 11(a) provides in relevant part that "[t]he county court shall have jurisdiction . . . over all crimes and other violations of law," thus giving Judge Smith subject matter jurisdiction over the criminal indictments at issue. Art. 6, § 26(c) provides that "a judge of the county court may perform, the duties of his office or hold court in any county and may be temporarily assigned . . . to the county court . . . in any county outside the city of New York. . . ." Judge Smith was temporarily assigned to Cortland County to handle Indictment No. 98-82. Judge Ames noted in deciding Petitioner's § 440.10 motion that it was not unusual to settle multiple indictments in a comprehensive plea agreement even when the indictments involved different courts and different judges, and the fact that Petitioner withdrew his pending motion under Indictment No. 99-112 as a part of his plea under Indictment No. 98-82 did not mean that Judge Smith assumed jurisdiction over Indictment No. 99-112. (Dkt. No. 46-3 at 149.)

denied.

### E. Claim that the Prosecutor Used Improper Inducements to Convince Petitioner to Plead Guilty on Indictment No. 99-112

Petitioner claims that the prosecutor used improper promises as inducements to convince him to accept a plea agreement under Indictment No. 99-112 in violation of his due process rights under the Federal Constitution. (Dkt. Nos. 35 at 6; 35-1 at 18-22.) The plea agreement provided for a three year determinate sentence and five years of post-release supervision. (Dkt. Nos. 46 at 226; 46-1 at 264.) Petitioner contends he was told that both the three year determinate sentence and the five year post-release supervision would run concurrently with the four to twelve year sentence he was serving for the probation violation and whatever sentence was imposed under Indictment No. 98-82, with the post-release supervision period beginning after three years even if he were still incarcerated. (Dkt. Nos. 35 at 6; 46-1 at 320.) Petitioner later learned that under New York law, the post-release supervision period would not commence until he was released from incarceration.[34] (Dkt. No. 46-1 at 319-321.) Petitioner's claim spills over to Indictment No. 98-82 by virtue of his assertion that when Judge Smith discussed the requirement that Petitioner withdraw his motion to withdraw his guilty plea under Indictment No. 99-112, he promised Petitioner that his sentence under that indictment would be three years

---

[34] In his Memorandum Decision and Order in Petitioner's New York Civil Practice and Rules Article 78 proceeding challenging DOCCS' calculation of his sentence providing for the post-release supervision period to commence after Petitioner's release from prison, Acting Supreme Court Justice Mark H. Fandrich denied the petition on the grounds that under Penal Law § 70.30(1)(a), concurrent sentences are not served separately but made into one single indeterminate sentence, and pursuant to Penal Law § 70.45(5)(a), post-release supervision begins upon a person's release from imprisonment. (Dkt. No. 46-1 at 319-21.) The Appellate Division affirmed in *Carpenter v. Corcoran*, 903 N.Y.S.2d 291 (4th Dep't), *lv. denied*, 912 N.Y.S.2d 291 (2010).

determinate without a five year period of post-release supervision. *Id*. at 20-21.

Petitioner did not raise the post-release supervision claim on his direct appeal. (Dkt. No. 46-3 at 192-252.) Petitioner did, however, raise the claim with regard to both indictments in his counseled § 440.10 motion. Respondent has argued that Petitioner failed to exhaust his post-release supervision claim because the claim was asserted solely in state law terms. (Dkt. No. 44 at 32.) While it is true that Petitioner's counsel cited only state court decisions, *People v. De Cresente*, 406 N.Y.S.2d 933 (3d Dep't 1978), one of those decisions, clearly employed a constitutional analysis, relying on the Supreme Court decision in *Santobello v. New York*, 404 U.S. 257, 262 (1971), in which the Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Moreover, in his supporting affirmation, Petitioner's counsel, echoing *Santobello*, argued that "[w]here the Court is a party to the plea bargain agreement and the sentence promised is one in which the Court is 'powerless' to impose, the Defendant should be given the benefit of the promise or permitted to withdraw his plea." (Dkt. No. 46-3 at 14.)

Judge Ames concluded that Petitioner's argument with regard to his guilty plea and sentence on Indictment No. 99-112 had no merit because:

> The transcript of the plea clearly shows that the Court said, "I am agreeing that I would go along with a determinate sentence of three years in a New York State correctional facility, with five years post-release supervision . . . and that the <u>determinate sentence</u> would run concurrent with, meaning together, with the sentence you are currently serving on a probation violation" (Emphasis added). The Court promised that the three year <u>determinate sentence</u> would run concurrent, not that the five years post-release supervision would run concurrent. The defendant received his

bargained for sentence and was not promised anything different.[35]

*Id*. at 148-49; *see also* Dkt. No. 46 at 226.

The Judge also found to be without merit Petitioner's claim that his guilty plea under Indictment No. 98-82 should be vacated because Judge Smith promised a sentence of only three years determinate under Indictment No. 99-112. (Dkt. No. 46-3 at 148-49.) The claim was rejected on the merits based upon the fact that Judge Ames, who accepted Petitioner's guilty plea and imposed sentence under Indictment No. 98-82, had told Petitioner on the record in sentencing him under Indictment No. 99-112 that the sentence included a five year period of post-release supervision. *Id*. at 149.

There is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory post-release supervision before accepting a guilty plea. *See Facen v. Cully*, 787 F. Supp. 2d 278, 284-85 (W.D.N.Y. 2011); *Potter v. Green*, 04-CV-1343 (JS), 2009 WL 2242342, at *6, 2009 U.S. Dist. LEXIS 64230, at *19 (E.D.N.Y. July 24, 2009) ("[A]s indicated by several other district courts in this Circuit, there is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory PRS [post-release supervision] before accepting a guilty plea."); *see also Lockhart v. Chandler*,

---

[35]  Judge Ames also found that with regard to the claim under Indictment No. 98-82, a § 440.10 motion was not the proper method of challenging the sufficiency of a plea made on the record. (Dkt. No. 46-3 at 149-50.)  The Judge relied on CPL § 440.10(2)(c) which requires the court to deny a motion where sufficient facts appear on the record to have permitted an adequate review of the issue on appeal and the defendant unjustifiably failed to take or perfect an appeal. While the Second Circuit has held that a state court's reliance on CPL § 440.10(2)(c) constitutes an adequate and independent state ground precluding federal habeas review, *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997), because Petitioner's direct appeal was delayed for ten years through no apparent fault of his own, the Court finds that he has established cause for the procedural default, *see Coleman*, 501 U.S. at 750, and will consider Judge Ames' denial on the merits.

446 F.3d 721, 724 (7th Cir. 2006) ("There is no Supreme Court precedent for the proposition that a defendant must be advised of a term of MSR [mandatory supervised release] at the time he attempts to enter a plea of guilty. Quite the contrary, the Court has expressly declined to decide such an issue in the very similar context of parole. Therefore, [petitioner] faces an impossible hurdle in showing the state contradicted, or unreasonably applied, clearly established federal law as determined by the Supreme Court because the Court has expressly declined to decide the issue.") (citing *Lane v. Williams*, 455 U.S. 624, 630 n.9 (1982) ("We do not decide whether, to establish such a constitutional violation, respondents must claim that they in fact did not know of the parole requirement at the time they pleaded guilty or that they would not have pleaded guilty had they known of this consequence.")).

Furthermore, the state court record, as Judge Ames indicated in his rejection of Petitioner's post-release supervision claim on the merits, does reveal that the Court clearly indicated to Petitioner that it was the three year determinate sentence under Indictment No. 99-112 that would run concurrently with the other sentences, not the five year post-release supervision sentence. (Dkt. No. 46 at 226.) Therefore, the state court record does not support Petitioner's claim that he was promised by Judge Ames that the post-release supervision period would commence running after three years even if he was still incarcerated, or that he was promised by Judge Smith that the post-release supervision period would not be a part of his sentence under Indictment No. 99-112.

Given the absence of Supreme Court precedent supporting Petitioner's due process argument, and the state court record showing that Petitioner was not promised that the five year post-release supervision period imposed under Indictment No. 99-112 would run concurrently

52

with his probation violation prison term, the Court recommends that Petitioner's post-release supervision claim be denied.

### F.    Claim of Prosecutorial Misconduct on Indictment No. 98-82

Petitioner claims that the prosecutors delayed in turning over exculpatory evidence – hospital records that in Petitioner's eyes disproved penetration – which would have mandated an affirmance by the Appellate Division of Judge Avery's order dismissing the second degree rape claim against Petitioner in Indictment No. 98-82.[36]  (Dkt. No. 35 at 4, 7-9.)  Petitioner argues that the prosecutorial misconduct resulted in the violation of his due process rights under the Federal Constitution.  *Id.*  Petitioner did not include the claim in either his counseled § 440.10 motion or on his direct appeal.  (Dkt. Nos. 46-3 at 3-21, 52-53; 46-3 at 192-252.)  Therefore the claim is unexhausted.  However, the claim may be deemed exhausted and procedurally defaulted because it is clear that the state court would hold the claim procedurally barred.  *See Perez*, 510 F.3d at 390.

Even if Petitioner had exhausted his prosecutorial misconduct claim on the merits, federal habeas review would be precluded under *Tollett v. Henderson*, 411 U.S. 258, 266 (1973).  In *Tollett* the Supreme Court "reaffirm[ed] the principle recognized in the *Brady* trilogy: a guilty

---

[36]  The claim that the prosecution engaged in misconduct by delaying the production of the victim's hospital records that showed no evidence of penetration is record based, and Petitioner did not include the claim in his direct appeal.  Petitioner moved for a *subpoena duces tecum* to obtain the Cortland Memorial Hospital records relative to the criminal charges.  *Id*. at 69-71.  ADA Franklin responded with a February 23, 2000, letter to Adinolfi informing him that she did not realize until she reviewed the motion for a *subpoena duces tecum* that he had not received the hospital records.  *Id*. at 72.  According to the letter, copies of the records were enclosed.  *Id*.  In an April 21, 2000, Decision and Order, Judge Avery issued the requested *subpoena duces tecum* to the hospital.  *Id*. at 122-25.  The records were also produced by Cortland Memorial Hospital on May 12, 2000.  *Id*. at 126-33.

plea represents a break in the chain of events which has preceded it in the criminal process.[37] When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offence with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970).]"[38]  *See also Coward v. Bradt*, No. 9:11-CV-1362 (LEK/CFH), 2013 WL 6195751, at *15, 2013 U.S. Dist. LEXIS 168931, *32 (N.D.N.Y. Nov. 27, 2013) (claim of prosecutorial misconduct prior to guilty plea barred under *Tollett*); *McCormick v. Hunt*, 461 F. Supp. 2d 104, 111 (W.D.N.Y. Nov. 20, 2006) ("[I]t is well-settled that '[a] defendant who pleads unconditionally guilty while represented by counsel may not assert independent claims relating to events that occurred prior to the entry of the guilty plea'") (quoting *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996)).

 Given the foregoing, the Court recommends that Petitioner's prosecutorial misconduct claim be denied

>    **G.**    **Claim Regarding Petitioner's *Pro Se* Motion to Withdraw his**
>             **Guilty Plea Under Indictment No. 98-82**

Petitioner's Amended Petition can be liberally construed to assert a claim that Judge Smith violated his right to due process by denying his motion to withdraw his guilty plea under

---

[37] The *Brady* trilogy includes *Brady v. United States*, 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); and *Parker v. North Carolina*, 397 U.S. 790 (1970).

[38] The evidence in the state court record supports the conclusion that failure to disclose the hospital records in a timely manner was an oversight rather than prosecutorial misconduct in any event. (Dkt. No. 46-72.)

Indictment No. 98-82 or, at the very least, by not holding an evidentiary hearing. (Dkt. Nos. 35 at 4; 35-1 at 3.) Petitioner asserted the claim on his direct appeal, arguing that the motion should have been granted, or at least a hearing should be held because of: "(1) his prompt request to withdraw the plea; (2) the threats made by Judge Smith that induced Mr. Carpenter's guilty plea; (3) his continuous statements of innocence; and (4) Mr. Adinolfi acted at cross-purposes with him with regard to this motion." (Dkt. No. 46-3 at 241.) The Appellate Division found that "the plea was properly entered and that County Court did not abuse its discretion in denying the motion to withdraw his plea without a hearing." *Carpenter*, 939 N.Y.S.2d at 660.

On his direct appeal, Petitioner failed to fairly present the federal constitutional nature of his claim, relying instead on state law.[39] Therefore, Petitioner's claim is unexhausted and procedurally defaulted, and Petitioner has failed to show cause for the default or actual innocence. *See Coleman*, 501 U.S. at 750.

The claim is without merit in any event. The Court has rejected Petitioner's claim that his plea under Indictment No. 98-82 was not voluntary, knowing, and intelligent, *see* Part III. A, *supra*, and relies upon the same reasoning in rejecting his claim with regard to his *pro se* motion to withdraw his guilty plea.[40] Furthermore, both federal and state precedent have established that

---

[39] Petitioner failed to cite federal or state cases employing constitutional analysis, failed to assert the claim in terms that called to mind a protected constitutional right, failed to allege a factual pattern well within the mainstream of constitutional litigation. *See Daye*, 696 F.2d at 194.

[40] *See also United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at plea allocations are not sufficient grounds to withdraw the guilty plea."); *United States v. Bonilla*, 17 F. App'x 11, 13 (2d Cir. 2000) ("This Circuit has consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are directly contradicted by his clear statements at allocution that contained sufficient factual detail about the offense.") (citation and internal quotation marks

a criminal defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. *See Hines v. Miller*, 318 F.3d 157, 162 (2d Cir. 2003) (collecting cases); *see also Reed v. Brown,* No. 10 Civ. 3072 (PGG)(AJP), 2011 WL 498363, at *8-9, 2011 U.S. Dist. LEXIS 14147, at *31-36 (S.D.N.Y. Feb. 14, 2011) (collecting cases). The Court concluded in *Hines* that in light of the precedents, the failure to hold an evidentiary hearing on a motion to withdraw a guilty plea "does not offend a deeply rooted or 'fundamental' principle of justice." *Id.* at 162. *See Medina v. California*, 505 U.S. 437, 442-46 (1992) ("[W]e should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (citations and internal quotation marks omitted).

Under AEDPA's deferential standards and the Supreme Court's decision in *Medina*, the Appellate Division's determination on Petitioner's direct appeal that the County Court did not abuse its discretion in denying Petitioner's request for a hearing on his motion to withdraw his guilty plea was not an unreasonable application of clearly established federal law. Therefore, the Court recommends that Petitioner's claim that denial of a hearing violated his due process rights be denied.[41]

---

omitted).

[41]    In his Amended Petition in No. 9:10-CV-1240, Petitioner also claimed that his constitutional rights were violated because Judge Ames failed to hold a hearing on his post-conviction counseled § 440.10 motion that would have allowed Petitioner to question Adinolfi

# IV. ANALYSIS OF CLAIMS ASSERTED BY PETITIONER IN NO. 9:12-CV-957

In his Petition in No. 9:12-CV-957, Petitioner claims that his guilty plea was not

voluntary, knowing, and intelligent because he was coerced to plead guilty by Butler; that he was

denied effective assistance of counsel in connection with the guilty plea for the same reason; that

he was improperly denied a hearing on his § 440.10 motion; and that the Appellate Division

effectively overruled Judge Ames' denial of a hearing on Petitioner's § 440.10 motion,[42] erred in

failing to recognize that Petitioner had filed a § 440.10 motion, and erred in failing to decide his

plea-coercion and ineffective counsel claims even though Petitioner had preserved his claims by

bringing a § 440.10 motion to vacate his guilty plea.[43]  (No. 9:12-CV-957, Dkt. Nos. 1 at 4-5; 1-2

---

about the off-record events that led to his involuntary guilty plea under Indictment No. 98-82.
(Dkt. No. 35-1 at 4.)  However, the Petitioner's claim that his guilty plea under that indictment
was not voluntary or knowing involved the five years of post-release supervision, which was
record based.  (Dkt. No. 46-3 at 18-20.)  Since that claim was record based, there would have
been no need for Adinolfi's testimony on a § 440.10 motion.  *See also* Part IV. A, *infra,*
supporting denial of the claim.

[42]  Although the Appellate Division found that Petitioner's coercion and ineffective
assistance of counsel claims which implicated matters outside the record were more properly
addressed in a § 440.10 motion, there is no language in the Court's decision either explicitly or
impliedly overruling Judge Ames' denial of a request for a hearing.  *See Carpenter* 939 N.Y.S.2d
658.  In fact, Judge Ames' denial of  Petitioner's § 440.10 motion was not before the Appellate
Division for review on the direct appeal.  *See People v. Finn*, 879 N.Y.S.2d 720 (2d Dep't 2009).

[43]  Even if Petitioner were correct in his claim that the Appellate Division erred in finding
that he had not moved to vacate the judgment of conviction, and thus erroneously applied New
York law with respect to the preservation rule, habeas relief does not lie for mere errors of state
law that do not otherwise constitute a violation of federal law.  *See Swarthout*, 131 S.Ct. at 861.
Such errors must rise to the level of the federal constitution or federal law for habeas relief to lie.
Petitioner's claim is without merit in any event.  The non-record challenges to his guilty plea and
legal representation in his § 440.10 motion were not before the Appellate Division on the direct
appeal, and the record on that appeal would not have placed the Appellate Division on notice of
the § 440.10 motion, on which the Appellate Division had previously denied leave to appeal.  *See*

at 6-7, 21-22, 25-26, 30.)

## A. Petitioner's CPL § 440.10 Motion

In his counseled § 440.10 motion to vacate his guilty plea under Indictment No. 00-112, made by Petitioner prior to the perfection of his direct appeal, he asserted a claim that his guilty plea was not knowing and voluntary inasmuch he was coerced by Butler to make admissions and plead guilty.[44] (Dkt. No. 46-3 at 11-12.) Petitioner alleged that in non-record communications prior to the plea, Butler told him that because he owed Butler money and could not complete payments under the retainer agreement, Butler would not represent him zealously, would not

---

*Finn*, 879 N.Y.S.2d at 720 (finding defendant's challenge to her guilty plea was unpreserved because she had failed to move to withdraw the plea prior to sentencing even though she had made a § 440.10 motion to vacate the judgment of conviction because that motion was not properly before the Appellate Division on the direct appeal). Furthermore, since the Petitioner was statutorily foreclosed from obtaining review of record based claims on his § 440.10 motion, *see* CPL § 440.10(2), that motion would not have given the state courts "one full opportunity" to resolve the Petitioner's record based claims of plea coercion and ineffective assistance of counsel as required for exhaustion. *See O'Sullivan*, 526 U.S. at 845. In addition, because Petitioner failed to include the claimed errors by the Appellate Division in his application for leave to appeal to the Court of Appeals, those claims are unexhausted, and Petitioner has failed to show good cause for failure to exhaust or actual innocence. *See DeLee v. Graham*, No. 9:11-CV-653 (MAD/CFH), 2013 WL 3049109, at *7, 2013 U.S. Dist. LEXIS 84519 ( N.D.N.Y. June 17, 2013) (claims petitioner failed to include in his application for leave to appeal to the Court of Appeals are unexhausted).

[44] The § 440.10 motion can also be liberally construed to assert an ineffective assistance of counsel claim intertwined with Petitioner's coercion claim. However, the ineffective counsel claim was not fairly presented as a federal claim and, as argued by Respondent, is unexhausted. (Dkt. No. 44 at 34-35. *See Gantt*, 2014 WL 112359, at *9 (failure to exhaust ineffective assistance of counsel claim where petitioner did not employ a federal constitutional analysis or cite federal cases employing relevant constitutional analysis). The claim is, in any event, without merit given Petitioner's plea allocution indicating he was satisfied with Butler and the lack of evidence in the state court record showing that Butler's representation fell outside of "the wide range of professionally competent assistance" to which Petitioner was entitled. *Strickland*, 466 U.S. at 690. Furthermore, the highly favorable outcome as a result of the plea agreement – allowing a guilty plea to only one of four charges and a concurrent sentence – belies Petitioner's claim of ineffective counsel. *See Belle*, 2013 WL 992663, at *13.

prepare adequately, and would not provide a reasonable defense if the case went to trial. (Dkt. No. 46-3 at 52.) Judge Ames declined to hold an evidentiary hearing and denied the motion. *Id.* at 148, 150. The Appellate Division denied leave to appeal.[45] *Id.* at 188. One of the grounds asserted by Petitioner in his habeas Petition in No. 9:12-CV-957 is that his § 440.10 motion was improperly denied because Judge Ames declined to order a hearing on the non-record communications between Butler and Petitioner that coerced Petitioner to plead guilty under Indictment No. 99-112.[46] (No. 9:12-CV-957, Dkt. No. 1 at 5.) Respondent concedes that Petitioner has exhausted his claim that his guilty plea under Indictment No. 99-112 was not voluntary, knowing, and intelligent. (Dkt. No. 44 at 31.)

In *Word v. Lord*, 648 F.3d 129, 132 (2d Cir. 2011), the Second Circuit held that "alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief."[47] *See*

---

[45] "Although New York's Criminal Procedure Law does not provide for an appeal as a matter of right from a decision denying a motion pursuant to Section 440.10, an aggrieved defendant can apply for leave to appeal from such a decision to the Appellate Division." *Diaz v. Conway*, No. 04 Civ. 5062 (RMB) (HBP), 2008 WL 2461742, at *16, 2008 U.S. Dist. LEXIS 46808 (S.D.N.Y. June 17, 2008). As a matter of federal constitutional law, there is no right to appeal from collateral criminal proceedings such as a § 440.10 motion. *See, e.g., Murray v. Giarratano*, 492 U.S. 1, 10 (1989).

[46] Butler has also asserted a claim that he was unconstitutionally denied a hearing on the § 220.60(3) motion in Indictment No. 99-112 that he withdrew as a part of his guilty plea under Indictment No. 98-82. (Dkt. No. 1 at 5.) Since the Court has recommended that Petitioner's coercion and ineffective assistance claims with regard to Indictment No. 98-82 be denied, it finds that the withdrawal of his motion to withdraw his guilty plea moots his claim regarding his § 220.60(3) motion. *See also Hines*, 318 F.3d at 162 (both federal and state precedent have established that a criminal defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea).

[47] Before, *Lord*, a number of district courts in the Second Circuit had concluded that "habeas relief is not available to redress alleged procedural errors in state post-conviction

*Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 402 (2001) (holding that the Constitution does not compel states to provide post-conviction proceedings for relief ).

In *Lord*, the Court also acknowledged that a majority of its sister courts had accordingly concluded that procedural errors in state post-conviction proceedings do not provide a basis for redress. *Id. See, e.g.*, *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error in state post-conviction proceedings represent an attack on a proceeding collateral to detention and not the detention itself."); *Bell-Rey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings . . . an infirmity in a state post-conviction proceeding does not raise an issue cognizable in a federal habeas application.") (citations and internal quotation marks omitted).

A number of district courts in this Circuit have relied upon *Lord* in ruling that claims that a trial court erred in not granting a hearing on a post-conviction motion do not implicate federal law and are not cognizable for habeas review. *See Simpkins v. New York,* No. 13-CV-3228 (JG), 2013 WL 2948082, at *1, 2013 U.S. Dist. LEXIS 83998, at *2 (E.D.N.Y. June 14, 2013) (claim that petitioner was denied "fair process" on his application for a writ of *coram nobis* is not proper under § 2254, which is not a vehicle for challenging deficiencies in state court post-conviction proceedings); *Peters v. Poole*, No. 03-CV-2919 (ARR), 2013 WL 6048994, at *11, 2013 U.S.

---

proceedings." *Jones v. Duncan*, 162 F. Supp. 2d 204, 217-18 (S.D.N.Y. 2001) (denying habeas relief on a claim that the trial court failed to hold an evidentiary hearing); *see also, e.g., Ferrer v. Superintendent*, 628 F. Supp. 2d 294, 309 (N.D.N.Y. 2008) ("Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.")

Dist. LEXIS 162231, at *29-30 (E.D.N.Y. Nov. 13, 2013) (finding petitioner's claim that summarily denying his request for a hearing on his ineffective assistance of counsel claim in a § 440.10 motion violated his due process rights in a state post-conviction proceeding not cognizable on federal habeas review); *Smalls v. Bradt*, No. 11-CV-0915 (MAT), 2012 WL 3722222, at *10, 2012 U.S. Dist. LEXIS 121419, at *31 (W.D.N.Y. Aug. 27, 2012) (petitioner's claim that state court erred in denying his request for a hearing on his CPL § 330.30 state post-conviction motion does not implicate federal law and is not cognizable for habeas review); *Strong v. Warden, Attica Correctional Facility*, No. 10 CV 3452 (MKB), 2012 WL 1886957, at *5, 2012 U.S. Dist. LEXIS 72114, at *15-16 (E.D.N.Y. May 22, 2012) (petitioner's claim of a procedural right to a hearing on a post-conviction motion under CPL § 330.30 does not implicate federal law and is not cognizable for habeas review).

Those decisions all appear to assume that denial of a hearing on § 440.10 is a procedural determination. There is, however, a split among district courts in the Second Circuit as to whether denial of a hearing on a § 440.10 motion is procedural, in which case under *Lord,* Petitioner's claim would not be cognizable for habeas review, or constitutes a determination on the merits for purposes of habeas review. In *Garcia v. Portuondo*, 104 F. App'x 776, 779 (2d Cir. 2004), an unreported decision without precedential value, the Second Circuit held that the state court's refusal to hold a hearing on the defendant's § 440.10 motion was a determination on the merits and, therefore, not procedurally barred as an "independent and adequate state procedural ground" preventing habeas review absent a showing of cause and prejudice. *Id*. at 778. The Court's determination was based upon CPL § 440.30(4)(c), which provides that a court presented with a motion to vacate a judgment pursuant to § 440.10, "[u]pon considering the

merits of the motion, . . . may deny it without conducting a hearing if . . . [a]n allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary proof." CPL § 440.30(4)(c) (2005).

District courts are divided as to whether denial of § 440.10 motion under § 440.30(4)(b) also constitutes a determination on the merits. Section 440.30(4)(b), which although not specifically cited in Judge Ames decision denying Petitioner's motion appears applicable, provides that "[u]pon considering the merits of the motion, the court may deny it without conducting a hearing if . . . the motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts, as required by subdivision one." CPL § 430.30(4)(b) (2005). *See, e.g., Giraldo v. Bradt*, No. 11-cv-2001 (JFB), 2012 WL 3835112, at *8-9, 2012 U.S. Dist LEXIS 126083, at *25-26 (E.D.N.Y. Sept. 5, 2012) (applying the reasoning in *Garcia* to denial of a § 440.10 motion under § 440.30(4)(b) and finding denial of a hearing to be a determination on the merits); *Williams v. Duncan*, No. 9:03-cv-568 (LEK/RFT), 2007 WL 2177075, at *14, 2007 U.S. Dist. LEXIS 103100, at *40 (N.D.N.Y. July 27, 2007) (holding that because "section 440.30(4) applies, by its own terms, only when a trial court denies a motion to vacate '[u]pon a consideration of the merits,' a denial pursuant to CPL § 440.30(4) is a decision on the merits."); *compare Williams v. McGinnis,* No. 04 Civ 1005 (NGG), 2006 WL 1317041, at *10, 2006 U.S. Dist. LEXIS 29400, at *31 (E.D.N.Y. May 15, 2006) (holding that denial under § 440.30(4)(b) would be an independent and adequate state law procedural grounds due to the inadequacy of petitioner's papers).

In this case, because Petitioner's claim that his guilty plea under Indictment No. 99-112

plea was not voluntary, knowing, and intelligent, and his related ineffective assistance of counsel claim with it, fail on both procedural[48] and substantive grounds, it is not necessary for the Court to take a position on the issue of whether denial of a hearing is procedural or on the merits. *See White v. West*, No. 04- CV-2886 (RRM), 2010 WL 5300526, at *24, 2010 U.S. Dist. LEXIS 128500, at *69 (E.D.N.Y. Dec. 6, 2010) (court found it unnecessary to take a position on the issue because petitioner's claim failed on both procedural and substantive grounds).

The evidence submitted by Petitioner in support of the claim that he was coerced by Butler to plead guilty under Indictment No. 99-112 and essentially abandoned by Butler, was limited to his self-serving affidavit and a letter affidavit from his grandmother who had personal knowledge of the financial situation with Butler, but no personal knowledge of Butler's alleged coercion.[49] (Dkt. No. 46-3 at 52-53, 55-56.) Thus, the moving papers failed to include "sworn allegations substantiating or tending to substantiate all the essential facts," CPL § 440.30(4)(b), lending support to Judge Ames' denial of the motion on the merits without a hearing.

Moreover, Petitioner's affidavit, accusing Butler of coercing him to plead guilty, directly contradicts his plea allocution. In his plea allocution before Judge Ames, Petitioner acknowledged that he was ready to enter a guilty plea to Sexual Abuse in the First Degree and answered Judge Ames' questions in the following manner:

---

[48] If Petitioner's hearing claim is deemed procedural, it fails under *Lord*, 648 F.3d at 132.

[49] Petitioner has submitted a report by a Robert Frost, allegedly retained by the Public Defender's Office, regarding an interview with a corrections officer at Cayuga Correctional Facility in which the officer claimed to have overheard an argument between Petitioner and Butler when he was transporting Petitioner to court. (Dkt. No. 1-4 at 17.) The report does not appear to have been a part of the state court record and may, therefore, not be considered by the Court. *See Cullen*, 131 S.Ct. at 1398-1401. The report is not particularly probative in any event.

| | |
|---|---|
| Court: | Have you discussed this plea with your attorney? |
| Defendant: | Yes, your honor. |
| Court: | Are you entering this plea with his advice and consent? |
| Defendant: | Yes. |
| Court: | Are you satisfied with the services provided to you by Mr. Butler? |
| Defendant: | Yeah. |

*   *   *

| | |
|---|---|
| Court: | Is there any reason why you do not understand what's happening here today? |
| Defendant: | No. |
| Court: | Do you understand if you enter this plea you are confessing your guilt to this charge? |
| Defendant: | Yes, your Honor. |
| Court: | This is a class D violent felony offense, do you understand that? |
| Defendant: | Yeah, I'm aware of that. |
| Court: | . . . I am agreeing that I would go along with a determinate sentence of three years in a New York state correctional facility, with five years post-release supervision . . . and that that determinate sentence would run concurrent with, meaning together with the sentence you are currently serving on a probation violation. |

*   *   *

| | |
|---|---|
| Court: | Have any other promises been made to you other than what's been put on the record here today? |
| Defendant: | No. |

*　*　*

| | |
|---|---|
| Court: | Do you understand by pleading guilty you are giving up your right to have a jury trial? |
| Defendant: | Yes. |
| Court: | . . . Do you understand if I accept your plea of guilty you can't raise any of [your] defenses either to the court or to the jury, do you understand that? |
| Defendant: | Yes. |
| Court: | You can't come back here in three or four weeks and say "I changed my mind, I now want to have a trial and assert defenses I want the jury or the court to hear," do you understand that? |
| Defendant: | I understand that. |
| Court: | Has anyone threatened you to get you to plead guilty today? |
| Defendant: | No, your Honor. |
| Court: | Are you pleading guilty to this crime of your own free will? |
| Defendant: | Yeah. |

(Dkt. No. 46-3 at 47.)  During the plea allocution Petitioner admitted to having tied his estranged wife's hands behind her back against her will and having engaged in sexual intercourse with her. *Id*. at 44-45.

As previously noted, sworn statements made by a defendant in entering a plea carry a "strong presumption of verity," *Blackledge*, 431 U.S. at 74, and "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Torres*, 129 F.3d at 715.  At his plea allocution, Petitioner expressed

65

satisfaction with Butler's legal representation and clearly answered no when Judge Ames asked him if anyone had threatened him to get him to plead guilty.

In addition, the guilty plea entered into by Petitioner was favorable to him. Plaintiff was indicted on four felonies under Indictment No. 99-112 and was allowed to plead guilty to only one. (Dkt. No. 46 at 152-55.) He was also allowed to serve the three year sentence imposed concurrently with his sentences for probation violation and under Indictment No. 98-82.

Finally, even after Butler was replaced by Adinolfi, and Petitioner's motion to withdraw his guilty plea under Indictment No. 99-112 was awaiting a hearing before Judge Ames, Petitioner agreed to withdraw his motion to withdraw his guilty plea as a part of his guilty plea under Indictment No. 98-82. (Dkt. No. 46-1 at 17-19.) The Court has already recommended rejection of Petitioner's claims that his guilty plea under Indictment No. 98-82, including the withdrawal of his motion, was not voluntarily, knowingly, and intelligently and was not made with the effective assistance of Adinolfi as counsel.

In light of the foregoing, the Court concludes that there is nothing in the state court record or applicable law that would render Judge Ames' decision on Petitioner's § 440.10 motion so erroneous that "there is no possibility fairminded jurists could disagree it conflicts with [the Supreme] Court's precedents," *Richter*, 131 S.Ct. at 786, as to either the voluntary nature of Petitioner's guilty plea or the effectiveness of Butler's representation. Therefore, the Court recommends that Petitioner's claim that his guilty plea under Indictment No. 99-112 was not voluntary, knowing and intelligent be denied, and to the extent his § 440.10 motion can be construed to assert an ineffective assistance of counsel claim, that claim be denied as well.

**B.      Petitioner's Direct Appeal**

Among the claims raised by Petitioner on his direct appeal included that his guilty plea under Indictment No. 99-112 was not voluntary, knowing, and intelligent because he was coerced to plead guilty by Butler, and that Butler had provided ineffective assistance of counsel with regard to the plea.  *Id*. at 193.  The claims were based upon essentially the same factual allegations as Petitioner's § 440.10 motion.  The Appellate Division found the claims were unpreserved for review on the appeal because Petitioner had withdrawn his motion to withdraw his guilty plea and had not moved to vacate the judgment of conviction.  *Carpenter*, 939 N.Y.S.2d at 660.  The Court also concluded that the factual basis of Petitioner's claim that Butler failed to adequately communicate with him and coerced him into pleading guilty involved matters outside of the record and was not properly the subject of a direct appeal.[50]  *Id*. at 660-61.

1.      Determination that Petitioner's Plea Coercion and Ineffective Assistance of
          Counsel Claims Were Not Preserved for Appellate Review

It is well-settled that a petitioner's federal claim may be procedurally barred from federal habeas review if the state court resolved the issue on an "adequate and independent" state

---

[50]  Respondent has conceded that Petitioner exhausted his claim that his guilty plea was not knowingly, voluntarily, and intelligently made because it was coerced by Butler.  (Dkt. No. 44 at 31.)   Respondent asserts, however, that because the Appellate Division found that Petitioner's ineffective assistance of counsel claim involved matters outside of the record and was, therefore, not properly the subject of a direct appeal, the claim is unexhausted.  *Id*. at 34-35.  Petitioner's ineffective assistance argument is also likely not exhausted because on the direct appeal the argument was couched in state law terms and relied solely upon New York cases analyzing the claim under New York law and the New York Constitution, with no mention of the *Strickland* standards.  *See generally* 466 U.S. 668; *Gantt*, 2014 WL 112359,r at *9.  Inasmuch as the claims are procedurally barred from federal habeas review in any event, the Court finds it unnecessary to engage in a detailed analysis of the exhaustion issue.

procedural ground.[51]  *Coleman*, 501 U.S. at 729-33; *see also Cone*,  556 U.S. at 465.  ("It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.");

*Harris v. Read*, 489 U.S. 255, 260 (1989) (when the state court has explicitly relied upon a procedural default to dispose of a claim, there is an "adequate and independent state ground" for the judgment and federal habeas review is prohibited").

A state procedural rule is considered adequate if it is "firmly established and regularly followed by the state in question."  *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).  To be independent, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (internal quotation marks omitted).

The doctrine barring procedurally defaulted claims from being heard is not without exceptions and does not apply if the petitioner can show either: (1) "cause for the default and actual prejudice" attributed thereto; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "'Cause' requires a showing that 'some objective factor external to the defense impeded counsel's efforts to raise the claim in

---

[51]  In *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 1917 (2013), the Supreme Court noted its recognition in *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309, 1315-16 (2012) of both the "historic importance of federal habeas corpus proceedings as a method for preventing individuals from being held in custody in violation of federal law," and the "importance of federal habeas corpus principles designed to prevent federal courts from interfering with a State's application of its own firmly established, consistently followed, constitutionally proper procedural rules."

state court' or that the basis for a claim was not reasonably available to counsel." *Brown v. Bradt*, No. 11-CV-972 (GLS/CFH), 2013 WL 1636070, at *11, 2013 U.S. Dist. LEXIS 55058, at *33-34 (N.D.N.Y. Mar. 25, 2013) (quoting *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 127 (2d Cir. 1995)).  Unless a petitioner establishes cause, the question of prejudice is not reached. *Cotto v. Herbert,* 331 F.3d 217, 242-43 (2d Cir. 2003).  To show prejudice, a petitioner must demonstrate that the error by the state court worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).  A fundamental miscarriage of justice involves showing that the petitioner is actually innocent of the crime. *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

"In determining whether New York's preservation rule constitutes an adequate state ground, [courts] look to the state's statutes and case law interpreting the rule."[52]  *Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007).  New York courts have long relied on the preservation requirement to deny challenges to guilty pleas and claims of ineffective assistance of counsel. *See, e.g., People v. Pascale*, 425 N.Y.D.2d 547, 547 (1980) ("The argument that the defendant should be relieved of his guilty plea was not raised by motion in the court of first instance prior to conviction and therefore has not been preserved for our review."); *see also People v. Jones*, 981 N.Y.S.2d 465 (3d Dep't 2014) (claim that guilty plea was coerced by court's alleged threat to defendant to illegally sentence him was unpreserved because he withdrew his motion to

---

[52]  New York's preservation rule at CPL § 470.05(2) "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error."  *Richardson*, 497 F.3d at 218 (citation and internal quotation marks omitted)

withdraw his plea and the record did not reveal that he moved to vacate the judgment); *People v. Hernandez*, 972 N.Y.S.2d 697, 698-99 (2d Dep't 2013) ("The defendant's contention that her plea of guilty was not knowing, voluntarily, and intelligently entered into is unpreserved for appellate review, since she did not move to withdraw her plea on the ground prior to the imposition of sentence."); *People v. Bressard*, 976 N.Y.S.2d 302, 304 (3d Dep't 2013) (defendant's challenge to voluntariness of his guilty plea is unpreserved "because the record fails to indicate that he moved to withdraw his plea or vacate the judgment of conviction"); *People v. Carthage*, 925 N.Y.S.2d 894, 895 (2d Dep't 2011) ("defendant's contention that his plea was not knowing, voluntary and intelligent is unpreserved for appellate review since he did not move to withdraw his plea on that ground prior to sentencing"); *People v. Finn*, 879 N.Y.S.2d 720, 720 (2d Dep't 2009) ("defendant's contention that his plea of guilty was not knowing, voluntary, and intelligent is unpreserved for appellate review since he did not move to withdraw his plea of guilty prior to sentencing"); *People v. Douglas*, 831 N.Y.S.2d 585, 586 (3d Dep't 2007) ("Defendant's challenges to the validity of his plea and to the effectiveness of defense counsel's representation as it impacts the voluntariness of his guilty plea are unpreserved for our review given his failure to move to withdraw his plea or vacate the judgment of conviction.").

Habeas courts in this Circuit have recognized that failure to move to withdraw a guilty plea or move to vacate a judgment of conviction constitutes an independent and adequate state procedural rule barring federal habeas review.[53]  *See, e.g.*, *Rojas v. Heath*, No. 11 Civ.

---

[53]  As with state court decisions, some federal preservation decisions specify that under New York law challenges to guilty pleas must be made by a pre-sentence motion to withdraw the plea, while others require that guilty pleas be challenged in a motion to withdraw under CPL § 220.60(3) or a motion to vacate the judgment of conviction under CPL § 440.10.

4322(CS)(PED), 2012 WL 5878679, at *7, 2012 U.S. Dist. LEXIS 166853, at *21 (S.D.N.Y.

Oct. 18, 2012) (well-settled that preservation of challenges to the validity of a guilty plea for

appeal in New York requires a motion to withdraw the plea or motion to vacate the judgment of

conviction); *Garcia v. Boucaud*, No. 09 Civ. 5758 (RJH) (GWG), 2010 WL 1875636, at *6,

2010 U.S. Dist. LEXIS 142951, at *18 (S.D.N.Y. May 11, 2010) (failure to withdraw a guilty

plea before sentencing constitutes an independent and adequate ground for the state court

decision); *Moore v. Lape*, No. 08-CV-0474 (MAT), 2010 WL 3522227, at *3, 2010 U.S. Dist.

LEXIS 93372, at *7 (W.D.N.Y. Sept. 8, 2010) ("[h]abeas courts in this Circuit held have held

that the failure to move to withdraw a guilty plea before sentencing constitutes an adequate and

independent state ground barring habeas review.").

    This Court too concludes that the Appellate Division determination that Petitioner failed

to preserve his challenge to his guilty plea under Indictment No. 99-112 and his related

ineffective assistance of counsel claim constitutes a procedural bar to habeas review of the claims

by this Court absent a showing by Petitioner of cause for the default and prejudice or his actual

innocence.  The Court also finds that the Appellate Division did not apply the preservation rule

in an exorbitant manner in this case.[54]

---

[54]  In *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002), the Supreme Court concluded that in
a limited category of "exceptional cases," when the state appellate court has applied a firmly
established and regularly followed procedural ground in an "exorbitant" manner, so that the
application of the ground was inadequate, federal courts are not barred from reviewing such a
claim on the merits.  The Second Circuit, in *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003),
identified the following three factors for consideration in making the determination: "(1) whether
the alleged procedural rule was actually relied on in the trial court, and whether perfect
compliance with the state rule would have changed the trial court's decision; (2) whether state
caselaw indicated that compliance with the rule was demanded in the specific circumstances
presented; and (3) whether petitioner had 'substantially complied with the rule give the 'realities
of trial.' and, therefore, whether demanding perfect compliance with the rule would serve a

Petitioner blames his failure to move to withdraw his guilty plea on his having been coerced by Judge Smith and Adinolfi into agreeing to withdraw his pending motion as a part of his plea agreement under Indictment No. 98-82, and on Adinolfi's ineffective assistance of counsel. However, the Court has rejected Petitioner's coercion claim under Indictment No. 98-82, as well as his claim that Adinolfi failed to provide effective assistance of counsel in connection with the plea, *see* Part III. A and C, *supra,* and likewise rejects the circumstances of Petitioner's guilty plea under that indictment as good cause for the default in moving to withdraw his guilty plea under Indictment No. 99-112. Furthermore, the Court finds that Petitioner has not provided evidence of his actual innocence. To the contrary, he admitted guilt in his plea allocution. (Dkt. No. 46-1 at 23-25.)

2.    Merits

Were the Court permitted to address the merits of Petitioner's direct appeal claims of plea coercion and ineffective assistance of counsel, they would fail on the merits for the reasons set forth in Part IV. A, *supra.*

Therefore, the Court recommends that Petitioner's direct appeal claims be denied.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Petitioner's Amended Petition for a Writ of Habeas Corpus in No. 9:10-CV-1240 (Dkt. No. 35) be **DENIED**, and it is further

**RECOMMENDED** that Petitioner's for a Writ of Habeas Corpus in No. 9:12-CV-957 (No. 9:12-CV-957, Dkt. No. 1) be **DENIED**, and it is further

---

legitimate state interest." The Court has considered these factors in concluding that the procedural bar was not exorbitant in this case.

**RECOMMENDED** that no certificate of appealability should be issued with respect to any of Petitioner's claims in Nos. 9:10-CV-1240 and 9:12-CV-957 as he has not made "a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000); and it is hereby

**ORDERED** that the Clerk's Office provide Petitioner with copies of all unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: March 28, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge